/s/ Roger O. DeBruler
Acting Chief Justice of
Indiana

All Justices concur.

**In re the Marriage of Wilson D. CONNER, Appellant–Respondent,**

v.

**Carolyn S. CONNER, Appellee–Petitioner.**

No. 48A05–9510–CV–385.

Court of Appeals of Indiana.

April 26, 1996.

Rehearing Denied June 17, 1996.

Gerald P. Shine, Jr., Hulse Lacey Hardacre Austin & Shine, Amderson, for Appellant.

Bryce D. Owens, Owens & Owens, Pendleton, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Wilson D. Connor appeals the order of the trial court distributing marital assets, which were not distributed in the original dissolution decree, to his former wife, Carolyn S. Connor. Wilson raises two issues for our review which we consolidate and restate as whether the trial court abused its discretion by denying Wilson's motion to dismiss the petition to reopen the cause and distribute marital assets. We reverse.

The facts most favorable to the judgment follow. Wilson and Carolyn were married in November, 1962. On September 24, 1985, the trial court signed a dissolution of marriage decree, which also provided for the distribution of the marital assets. The parties continued to live together until January 16, 1993, when they separated. On June 17, 1993, Carolyn filed a petition to reopen the case, alleging that marital assets were omitted from the distribution decree. On June 30, 1993, the trial court granted her petition.

On July 12, 1993, Wilson filed a motion to dismiss Carolyn's petition. On August 31, 1993, a hearing was held on the motion to dismiss, which was later granted. On October 12, 1993, Carolyn filed a motion to correct errors. On October 28, 1993, the trial court vacated the initial dismissal and ordered that a hearing be set for Carolyn's petition to reopen.

On April 4, 1994, Wilson filed a second motion to dismiss, which was later denied. After a hearing on December 1, 1994, the trial court entered findings and an order to reopen the property distribution issue. In the order, the trial court found that several marital assets were not distributed in the dissolution decree and, accordingly, set a hearing to determine the distribution of those assets. Specifically, the court found:

"2. The marital residence which was awarded to Respondent by the Judgment of Dissolution of Marriage is located on several lots set forth in the original plat to the town of Ingall commonly known as 210 Houston Street, Ingalls, Indiana....

3. On February 7, 1981, the parties acquired title to lot 39 of the original plat in the town of Ingalls and held title to such real estate as tenants by the entireties.... [This lot] was unimproved as the parties had razed the structure located thereon, and cleaned the lot. After entry of Dissolution of Marriage and during a period of cohabitation the Respondent contracted for the erection of a pole barn upon such lot which was done with the knowledge and consent of the Petitioner. The pole barn was paid for in it's [sic] entirety by funds earned by the [Respondent]. The Petitioner had previously deeded her interest in the lots concerned with 210 Houston Street to the Respondent but lot 39 remains held by the parties jointly....

4. The Respondent purchased 3.47 acres of real estate on April 17, 1977.... Ti-

tled [sic] to such real estate has always been held in the individual name of the Respondent although it was purchased during the marriage with marital assets. . . .

\* \* \* \* \* \*

7. During the period of the parties [sic] marriage the Respondent . . . accumulated rights under [his] pension plan which were in existence on the date of the dissolution. . . ."

Record, pp. 43–46.

On February 8, 1995, a hearing was held to determine the proper distribution of the omitted marital assets. On May 10, 1995, the court distributed those assets as follows:

"2. Three (3) marital assets exist which were not distributed pursuant to the Decree of Dissolution of Marriage entered in this cause on September 24, 1985: Lot 39 of the original plat of the town of Ingalls ["Lot 39"], 3.47 acres of real estate located in Hancock County, Indiana [the "Hancock property"] . . . and Respondent's pension at General Motors Corporation.

\* \* \* \* \* \*

4. The evidence in this cause does not justify a division of these assets other than on a 50–50 basis.

5. The real estate in Ingalls, . . . shall be appraised by an appraiser chosen by the parties and paid equally by the parties. . . . Petitioner, Carolyn Conner, shall receive from the Respondent one-half of such appraised value. . . .

6. Petitioner shall receive one-half interest in Respondent's pension benefits as they existed on the date of dissolution of marriage in this cause. . . .

7. The real estate owned in . . . Hancock County, Indiana, shall be appraised by an appraiser selected by the parties. . . . Each party shall pay one-half of the cost of the appraisal and Petitioner shall re-

ceive from the Respondent one-half of such appraised value. . . ."

Record, pp. 52–54. On May 31, 1995, Wilson filed a motion to correct errors, which was denied. Wilson now appeals.

The sole issue for our review is whether the trial court erred by denying the motion to dismiss and reopening the case to distribute the marital assets. The resolution of this issue requires us to first consider whether the dissolution decree, signed by the judge on September 24, 1985, was a final order, and second, to consider whether the decree could be modified. We address each of these in turn.

First, the parties dispute whether the dissolution decree constituted a final order.[1] Carolyn argues that "the judgment, although apparently signed by the Judge in 1985, was not entered until 1993." Appellee's brief, pp. 5–6. In the record of proceedings, there is a copy of the dissolution decree, signed by the judge and dated on September 24, 1985. The decree is also signed by the parties. However, the decree does not have a file mark on it from the county clerk's office, but rather has a handwritten notation marked "COPY" on it. Record, p. 147. Carolyn claims that the omission of the decree from the court's order book demonstrates that the judgment was not "entered".

Indiana statutory law provides that in an action for the dissolution of marriage, the court is required to enter a dissolution decree after determining that there has been an irretrievable breakdown of the marriage. Ind.Code §§ 31–1–11.5–3, 31–1–11.5–9.[2] The decree may include the disposition of matters such as property distribution. I.C. § 31–1–11.5–9. The dissolution decree becomes final when it is "entered". *Id.* Moreover, our trial rules provide the administrative procedures which must be met to secure a final judgment. *See* Ind.Trial Rules 58, 77. Trial Rule 58 requires that "upon a decision announced, the court shall promptly prepare and sign the judgment, and the clerk shall

---

1. A party may only appeal a final judgment, subject to certain exceptions not relevant here. Ind.Appellate Rule 4(A).

2. Most of I.C. § 31–1–11.5 has recently been amended. The amendments, however, are irrelevant to our review as we must apply that version of the statute in effect at the time of the distribution.

thereupon enter it." T.R. 58 (Burns 1985).[3] The clerk of the court is required to maintain the "civil docket" (now the CCS), a sequential record of the judicial events in the proceeding. T.R. 77(B) (Burns 1985). In addition, the clerk is obligated to maintain the "order book" (now the RJO), in which "[e]very ruling, order, or judgment of the Judge should be entered or filed in such book verbatim for each day . . . .". T.R. 77(D) (Burns 1985).

■ Notwithstanding the trial rules, however, we have held that while a court speaks only through its order book, a judgment is effective between the parties from the time it is rendered. *Tancos v. A.W. Inc.;* 502 N.E.2d 109, 113 (Ind.Ct.App.1986), *reh'g denied, trans. denied.* In addition, our supreme court has previously commented on the procedural mechanisms for recording a judgment:

> "rendition of the judgment is the act of the judge, judicial, but *the entry thereof the act of the clerk, ministerial,* and the judge's signature is likewise a ministerial attestation to the correctness of the clerk's transcription of a judgment complete in itself when pronounced by the judge. This distinction is recognized by those cases which hold that the time for appeal runs from the date of the rendition of the judgment not the date of its entry."

*Bailer v. Dowd,* 219 Ind. 624, 627, 40 N.E.2d 325, 326 (1942) (emphasis added). Thus, the entry of the judgment in the order book is merely a ministerial function of the court clerk. *Id.* Moreover, the absence of an order book entry is correctable by a *nunc pro tunc* entry, which, when made, takes effect as of the time of the original judgment. *State v. Bridenhager,* 257 Ind. 544, 547, 276 N.E.2d 843, 844 (1971), *reh'g denied.*[4]

In the present case, the docket entry on September 24, 1985, provides helpful and detailed information about the dissolution proceeding as it occurred. The lengthy entry states:

> "This matter comes before Master Commissioner Anderson for final hearing this date. The petitioner-wife appears in person and by counsel, Sharon Carroll Clark; the respondent fails to appear, although having been duly served with process of this Court and having notice of this hearing. Cause submitted, evidence heard. The Commissioner finds that the marriage of the parties is irretrievably broken and should be and is hereby dissolved this date. The Commissioner further finds that the parties are the parents of two minor children, Lisa Conner and Kory Conner, and that the petitioner-wife shall have the custody of the said minor child, Lisa Conner, and that the respondent-husband shall have the custody of the said minor child, Kory Conner. Each party shall have all reasonable rights of visitation with the particular child not in his or her custody. The Commissioner further finds that the respondent-husband shall pay as support for the said minor child, Lisa Conner, the sum of $35 per week, and shall execute a Wage Assignment forthwith for the payment of said support. The Commissioner further finds that the respondent-husband shall continue to carry Blue Cross–Blue Shield insurance on both minor children and shall be responsible for payment of all medical, dental and optical expenses incurred for the benefit of the children. The Commissioner further finds the respondent-husband shall be responsible for the sole support of the minor child, Kory Conner, and that the respondent-husband shall pay a clothing allowance for said minor child, Lisa Conner, in the sum of $100, due and payable August 1, 1986, and each year thereafter until further or-

---

**3.** This rule was amended in 1991. The amendment imposed a duty on the clerk to enter the judgment in the Record of Judgments and Orders (the "RJO") and note the entry in the Chronolocial Case Summary (the "CCS"). *See* T.R. 58(A) (Burns 1991). However, the issue in the present case is the effect of the dissolution decree in 1985. Thus, we must apply that version of the rule in effect during 1985.

**4.** We will focus on the signed judgment and the docket entry on September 24, 1985. We note the absence of any *nunc pro tunc* order in the record. Carolyn repeatedly maintains that the judgment was not entered until 1993, but fails to demonstrate that the judgment was entered at all. For purposes of our review, therefore, we will focus on the signed judgment and the docket entry on September 24, 1985.

der of Court. The Commissioner further finds that the parties are owners of real estate located at 210 North Houston St., Ingalls, IN, and that said real estate should be set over to the respondent-husband, subject to payment of the mortgage due and owing thereon, which he shall assume and hold the petitioner harmless therefrom. The Commissioner further finds that the setting over of the said property shall also be subject to an equity lien in favor of petitioner-wife in the total sum of $9,000, and that said lien shall be paid no later than sixty days from the date of this decree. The Commissioner further finds that immediately upon payment of said lien to petitioner-wife by the respondent husband, the petitioner-wife shall vacate the said real estate and surrender its sole possession to the respondent-husband. The Commissioner further finds that the petitioner-wife shall have as her sole and absolute property the 1986 Chevrolet automobile and any and all bank accounts in her name, and the respondent-husband shall pay off the indebtedness due and owing on the 1986 Chevrolet and hold petitioner-wife harmless therefrom. The Commissioner further finds that the respondent-husband shall have as his absolute property the 1985 Chevrolet automobile, the 1980 Oldsmobile and the 1983 Harley Davidson, subject to the indebtedness thereon which he shall pay and hold the petitioner-wife harmless from. Further, the respondent-husband shall have all bank accounts in his name. The Commissioner further finds that the respondent-husband shall pay the petitioner-wife's attorney fees in the sum of $250, which petitioner's attorney has represented this date that said fees are now paid and satisfied. Costs vs. petitioner; costs paid. All as per written Decree.

/s/ James O. Anderson, Jr., Comm.

Comes now the Court and enters *JUDGMENT* on the Commissioner's findings and recommendations.

/s/ Dennis D. Carroll, Judge"

Record, pp. 4–5

■ It is clear from the docket entry that the judge promptly prepared and signed the judgment following a hearing, in accordance with T.R. 58. Carolyn maintains, however, that the judgment was not entered in the court's order book in 1985 and that neither the clerk nor the court had a copy of the decree. This position is supported by the record.[5] During the August 31, 1993, hearing on Wilson's motion to dismiss, the commissioner and the parties noted that the order book did not contain the decree of dissolution:

"MR. SHINE [Wilson's counsel]: Your Honor, if it may please the Court, the Court file did not have a Decree of Dissolution of Marriage in it.

COMMISSIONER DAVISSON: Yes, it does. It's right here. Well, unless you put it in.

MR. SHINE: It has [sic] not as of yesterday. There was none in the Orderbook as of yesterday.

COMMISSIONER DAVISSON: I'll be darned.

MR. SHINE: [Carolyn's prior counsel] was dropping one off this morning.

COMMISSIONER DAVISSON: Have you see [sic] it?

MR. SHINE: I have not seen the Decree. I have the minutes from September 24th of 1985."

Record, pp. 75–76. The Commissioner then summarized the terms of the dissolution decree for the parties.

However, despite the omission of the decree from the order book, we find that the decree was effectively "entered". The terms of the decree are recorded in the docket entry; that entry includes all of the distribu-

---

**5.** In her brief, Carolyn relies on a copy of the docket contained in the supplemental record to support her argument that the decree was not entered in 1985. The supplemental record copy of the docket differs from the copy of the docket in the original record only in that the supplemental record copy contains handwritten entries at the bottom. Without addressing the admissibility of the handwritten entries to prove that the court's order book did not contain the decree, we find other evidence to support that fact.

tion and custody terms and omits only the formal language of the order. On the facts of this case, the omission of the decree from the order book constituted a "ministerial" defect. *See Bailer,* 40 N.E.2d at 326; *see generally Johnson v. Taylor,* 173 Ind.App. 342, 346, 363 N.E.2d 1067, 1069 (1977), *reh'g denied* (dissenting opinion stating that "when the trial judge affixed his signature, that was the action of the trial court. The mere failure to place a file stamp on the document and failure of the clerk to perform a ministerial act of placing the signed order in a docket book does not alter the fact that the [transcript of proceedings] was part of the record.")

Moreover, neither party argues that they failed to receive a copy of the decree or were unaware of the decree's terms. Rather, the parties substantially complied with the terms of the dissolution decree in 1985, notwithstanding their cohabitation together. Wilson properly made the $35 child support payments as required under the decree. He continued to make payments on Carolyn's 1986 Chevrolet as required. Wilson also made the $9000 payment to the clerk of the court within sixty days of the judgment for the real estate at 210 Houston Street. In return, Carolyn signed a quit claim deed for the property in favor of Wilson. Both parties admitted that they each had custody of one child and conceded that they were divorced in 1985. Thus, even if the order was improperly omitted from the court's order book, we find that a valid dissolution and property distribution decree was in effect as of September 24, 1985. Consequently, our next task is to determine the rights of the parties to alter the terms of the 1985 decree.

Carolyn contends that she is not seeking to modify or change the decree as entered, but is simply asking the court to complete its ruling on the property which was "inadvertently omitted". Appellee's brief, p. 3. We disagree.

■■■ The distribution of marital property during a marriage dissolution proceeding is governed by I.C. § 31–1–11.5–11, which

provides that "the court shall divide the property of the parties...." I.C. § 31–1–11.5–11(b).[6] To make an equitable property settlement, the trial court must have before it all the property in which the parties hold an interest. *In re Marriage of Julien,* 397 N.E.2d 651, 654 (Ind.Ct.App.1979), *reh'g denied; see also Huber v. Huber,* 586 N.E.2d 887, 889 (Ind.Ct.App.1992), *trans. denied* (holding that the " 'one pot' theory of Section 11(b) specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award"). All marital property must be disposed of in one final settlement. *Waggoner v. Waggoner,* 531 N.E.2d 1188, 1189 (Ind.Ct.App.1988). Since the marital property must be disposed of at one time, the trial court must have before it a fixed, presently ascertainable value of the assets. *Id.* The parties have the burden to produce evidence as to the value of the assets. *Neffle v. Neffle,* 483 N.E.2d 767, 770 (Ind.Ct.App.1985), *reh'g denied, trans. denied.* Therefore, impliedly, the parties also have the burden to produce evidence as to the existence of the assets.

■■■ The modification of a property disposition is governed by I.C. § 31–1–11.5–17, which states that "[t]he orders as to property disposition entered ... may not be revoked or modified, except in the case of fraud which ground shall be asserted within six (6) years after the order is entered." I.C. § 31–1–11.5–17. We have recently discussed the rationale behind limiting the modification of a property distribution:

"A strong policy favors the finality of marital property divisions, whether the court approves the terms of the settlement agreement reached by the parties ... or the court divides the property under Indiana Code § 31–1–11.5–11. One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a marriage. When marital property is divided, both assets and liabilities must be considered. Thus, a partial modification of a property settlement agreement will likely upset the division of

---

**6.** The parties do not dispute that the assets distributed by the trial court in 1993 constituted "property" under this statute. *See* I.C. § 31–1– 11.5–2(d) (defining property as all the assets of either or both parties).

property equation in the Decree. The adjustment of one asset or liability may require the adjustment of another to avoid an inequitable result or may require the reconsideration of the entire division of property."

*Dusenberry v. Dusenberry*, 625 N.E.2d 458, 460–461 (Ind.Ct.App.1993) (citation omitted). However, notwithstanding statutory limitations on the right to modify a property division, the equitable relief provisions of T.R. 60(B), which allow for relief from judgment, provide some opportunity to modify a property distribution decree in certain circumstances. *Id.* at 461. Trial Rule 60(B) provides:

"On motion and upon such terms as are just the court may relieve a party . . . from an entry of default, final order, of final judgment, . . . for the following reasons:

(1) mistake, surprise, or excusable neglect;

(2) any ground for a motion to correct error . . . which by due diligence could not have been discovered in time to move for a motion to correct error under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

\*     \*     \*     \*     \*     \*

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3). . . .

The motion shall be filed within a reasonable time for reasons . . . (8), and not more than one year after the judgment, order of proceeding was entered or taken for reasons (1), (2), (3), and (4)."

T.R. 60(B). In Carolyn's brief, however, she concedes that her petition to reopen did not rely on T.R. 60(B).[7] Accordingly, we cannot address the propriety of any modification under T.R. 60(B) grounds. Instead, we are bound by the statutory guidelines and must determine the propriety of the modification under that authority.

Carolyn contends that the trial court properly distributed three assets because they were omitted from the original decree. She claims that the original decree was "insufficient as a matter of law" because it failed to divide certain marital assets. The assets include the Hancock property, Wilson's pension, and the property on Lot 39. We will discuss each of these assets in turn.

█ First, the parties owned a 3.47 acre plot of land in Hancock, Indiana. Wilson purchased the land in 1977 while married to Carolyn. The title to the property always remained in Wilson's name. At the hearing on the petition to reopen, Carolyn testified she did not know about the property until after Wilson bought it. However, she testified she knew about the property and the pension during the dissolution proceedings in 1985:

"Q    You did know it, though, at the time of the dissolution when you met with Mrs. Clark [counsel], did you not?

A    Yeah.

Q    . . . was this property discussed by you and Mrs. Clark?

A    The ground?

Q    Yes.

A    Yeah.

Q    And did you advise your husband and Mrs. Clark that you had no, you wanted no interest in that property at that time?

A    I told her then—she asked me about it—that I had legal rights to half of it then. And I told her that he had bought it. And same with the . . . She asked me about the ground and the pension. And I told her that he said not to worry about it, that I'd be taken

---

7. In her memorandum in opposition to the motion to dismiss, Carolyn states that she "is not necessarily relying upon any of the basis set forth in Trial Rule 60(b) although it is possible that 60(b)(1) mistake would lie, and if so, would be timely in that not one year has passed since the entry of the judgment in the order book." Record, p. 23. However, as we have previously determined, the dissolution decree was entered in 1985 and, consequently, the one year limitation to raise a mistake under 60(B)(1) had passed by the time Carolyn filed her petition to reopen in 1993.

care of. That it was no sense putting it in the divorce decree. So we just didn't put it in. It wasn't important.

Q Did you tell your husband and Mrs. Clark that you wanted no interest in that property at that time?

A At that time."

Record, pp. 151–152. Clearly, Carolyn had knowledge of the Hancock property.

Similarly, Carolyn knew about the pension. Wilson had accumulated a pension from his employment at General Motors. The General Motors Pension Administration estimated that had Wilson retired in 1985, he would have received $440 per month. In addition to the testimony quoted above, Carolyn testified several times that she knew about the pension at the time of the dissolution, but did not pursue it. In fact, when asked if Carolyn was alleging any fraud on behalf of Wilson for concealing the assets, Carolyn responded, "No. I know what he's got." Record, p. 81.

Based on this testimony, we hold that the trial court erred in distributing the Hancock property and the pension. Since the parties have the burden of establishing the existence and value of the assets during a distribution proceeding, the original decree cannot be "insufficient" for its failure to distribute assets of which the trial court was unaware. See *Julien*, 397 N.E.2d at 654; see also *Neffle*, 483 N.E.2d at 770. Moreover, Carolyn was represented by counsel during the negotiations and had the opportunity to include those assets in the 1985 distribution. However, she chose not to present those assets to the court as part of the marital assets requiring distribution. Therefore, since Carolyn had the opportunity to include these assets in the original distribution decree, we find no justification to support a subsequent modification almost eight years later. Accordingly, we reverse that portion of the trial court's order relating to the Hancock property and the pension.

▮ Carolyn also contends that Lot 39 was omitted from the original decree and, therefore, properly divided by the trial court. The evidence with respect to the Lot 39 property is unclear. The original decree provided for the distribution of property at 210 Houston Street, which was purchased by the parties in 1963 or 1964. In 1981, Wilson purchased the adjoining lot. This lot had an address of either 212 or 214 Houston Street. When asked whether the parties discussed the property at 214 Houston Street during the distribution negotiations in 1985, Wilson answered that "[214 Houston Street] was all a part of the three lots. I already owned 40 and 41. So we had bought 39, and we considered that all one place." Record, p. 197. Wilson testified that he assumed that the decree's reference to 210 Houston Street included Lot 39. The parties later noticed the omission of Lot 39 from the decree. While Wilson noticed the omission in 1986 or 1987, the record is unclear as to when Carolyn noticed the omission.

Notwithstanding the parties' confusion, we find that the trial court erred in distributing this asset. After Carolyn discovered that the decree omitted Lot 39, she could have raised a T.R. 60(B) motion to obtain relief from judgment. Assuming that Carolyn noticed the omission within one year from the date of the decree, she could have raised a T.R. 60(B)(1) motion. In the motion, Carolyn could have alleged the mutual mistake of the parties in assuming that the decree's reference to 210 Houston Street included the distribution of Lot 39. If Carolyn discovered the omission more than one year from the decree's entry, she could have raised a T.R. 60(B)(8) motion and explained the circumstances under which the exclusion of Lot 39 occurred and became known. A T.R. 60(B)(8) motion must be raised within a "reasonable" time. T.R. 60(B)(8). Whether Carolyn would have succeeded in obtaining relief from judgment is immaterial to our decision. What is important, however, is the opportunity that Carolyn had to pursue the relief sought and, ultimately, granted by the trial court. In light of the strong policy disfavoring modification, the express statutory limitations restricting modification, and Carolyn's failure to proceed with other authorized means for modification, we find that Carolyn has failed to demonstrate that the property could be divided almost eight years after the original property distribution. Therefore, we hold that the trial court erred in modifying the 1985 decree and distribution this asset.

Since we find that the trial court erred in distributing these three assets, the judgment of the trial court is reversed in all respects.

REVERSED.

BARTEAU, J. and BAKER, J. concur.