Courtney SMITH, Appellant–Plaintiff,

v.

Natalie DEEM, Appellee–Defendant.

No. 41A05–0408–CV–449.

Court of Appeals of Indiana.

Sept. 30, 2005.

Keith G. Blazek, Eckert & Craven, P.C., Indianapolis, for Appellant.

Richard R. Skiles, Janet M. Prather, Skiles DeTrude, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant–Plaintiff, Courtney Smith, challenges the trial court's grant of partial summary judgment in favor of Appellee–Defendant, Natalie Deem. Because we agree with Deem that Smith did not timely file her Notice of Appeal, we dismiss this appeal.

The present case stems from an automobile accident in which Smith was the driver and Deem was the passenger. The basic facts appear to be undisputed and were recounted by our Supreme Court as follows:

"Eighteen-year-old Natalie Deem owned a car insured by the Cincinnati Insurance Company. While out late one evening with fifteen-year-old Courtney Smith, Deem became extremely intoxicated, sick, and wanted to go home. Smith claimed Deem gave her permission to drive Deem's car. Deem did not remember. In any event the record is clear that Smith possessed only a learner's permit and could lawfully drive only when accompanied by a guardian or relative who holds a valid operator's license. *See* Ind.Code § 9–24–7–4(2). It is undisputed that Deem had a valid operator's license, however Deem is not Smith's guardian and Deem and Smith are not related. Attempting to drive Deem home, Smith ran off the roadway, which was covered with snow and ice. Both Smith and Deem were injured as a result." *Smith v. Cincinnati Ins. Co.,* 790 N.E.2d 460, 460–61 (Ind.2003).

The procedural history of this case spans over six years, starting with Smith filing a complaint for damages against Deem and Deem's insurer, Cincinnati Insurance Company, on August 11, 1998. On October 4, 1999, Smith filed an amended complaint which named new defendants who were served with summonses. These new defendants were Susan Stafford–Ellis, Billy Collins, and Chad Collins. Eventually, on September 1, 2000, the trial court permitted Smith to file a second amended complaint. During the course of the litigation, the Collinses were dismissed as parties. On June 6, 2001, the trial court issued a declaratory judgment in favor of Cincinnati Insurance, concluding that Smith was not covered under Deem's insurance policy. This decision was affirmed by our Supreme Court upon transfer. *See Smith,* 790 N.E.2d at 461.

On November 20, 2003, Deem filed a motion for partial summary judgment.

Smith was granted an extension of time in which to respond to this motion and filed a response on January 9, 2004 wherein she argued that summary judgment in favor of Deem was not warranted, but that Smith was entitled to judgment as a matter of law regarding the issue of negligence per se. A hearing upon the motion for summary judgment was held on April 15, 2004. Thereafter, the trial court issued an order granting Deem's motion for partial summary judgment. This order is file-stamped "JUN 17 2004," and the trial court judge's signature is dated the same. Appendix at 29–30.

On July 1, 2004, Smith and Deem both joined a motion to dismiss Smith as a counter-defendant.[1] On July 14, 2004, within thirty days of the trial court's rendition of the summary judgment order, Smith petitioned the trial court to certify the order for interlocutory appeal. *See* Ind. Appellate Rule 14(B)(1)(a). On July 26, 2004, the trial court granted the motion to dismiss Smith as a counter-defendant. The chronological case summary ("CCS") then contains the following entry for July 30, 2004:

"Clerk received Order dated 06/17/04.

OB 67 PG 217–A. fkd" App. at 26.

On August 11, 2004, the trial court certified its order for interlocutory appeal. That same day, Deem filed a "Response to Petitio[n] to Certify Interlocutory Order for Appeal." App. at 26–27. On August 23, 2004, Smith filed both a motion to withdraw the order certifying the order for interlocutory appeal[2] and a Notice of Appeal. The Notice of Appeal states in relevant part:

"Plaintiff, Courtney Smith, by counsel, pursuant to Ind. Appellate Rule 9(A), respectfully gives notice of an appeal from the following judgment or order

entered by the Johnson County Superior Court 3:

Order Granting Defendant Natalie Deem's Motion for Partial Summary Judgment: June 17, 2004.

This appeal is taken from a final judgment.

This appeal will be taken to the Indiana Court of Appeals." App. at 173.

On September 2, the court stayed proceedings pending resolution of the appeal.

On October 20, 2004, after Smith had filed her Appellant's Case Summary, this court issued an order which stated in part:

"Having reviewed Appellant's Case Summary, the Court FINDS AND ORDERS:

1. Pursuant to Indiana Appellate Rule 9(A)(1), the Appellant's Notice of Appeal was due to be filed on or before July 19, 2004.

2. Appellant filed a Notice of Appeal on August 19, [sic] 2004, outside the thirty-day limit prescribed by App. R. 9(A)(1).

3. When a Notice of Appeal in a civil matter is filed outside the time limit prescribed in App. R. 9(A)(1), the right of appeal is forfeited. *See* App. R. 9(A)(5).

4. Appellant is ordered to show cause within thirty-five days why this appeal should not be dismissed. Appellant's response shall include a certified copy of the trial court's chronological case summary."

Smith responded, noting that although the trial court signed the order granting partial summary judgment on June 17, 2004, the CCS indicates that this order was not entered into the Record of Judgments and Orders ("RJO") until July 30, 2004. Thus,

---

1. Deem had earlier filed a counter-claim against Smith.

2. The CCS does not indicate that the trial court ever explicitly ruled upon this matter.

Smith argued that her Notice of Appeal was timely from the July 30 date. This court then entered an order on December 3, 2004 stating in part:

" 1. The trial court's chronological case summary appears to show that the trial court did not enter judgment until July 30, 2004.

2. Appellant filed a Notice of Appeal on August 23, 2004, within the thirty-day limit prescribed by App.R. 9(A)(1).

3. Appellant has shown cause why the appeal should not be dismissed. Accordingly, this Court's October 20, 2004 show cause order is DISCHARGED."

■ Upon appeal, Deem still claims that Smith's Notice of Appeal was untimely and that this appeal should therefore be dismissed. Although the motions panel of this court has already ruled upon this issue, Deem is not precluded from presenting this argument to us. We are reluctant to overrule orders decided by the motions panel, but we are not precluded from doing so. *See State v. Moore*, 796 N.E.2d 764, 766 (Ind.Ct.App.2003); *Davis v. State*, 771 N.E.2d 647, 649 n. 5 (Ind.2002). Thus, we address the timeliness of Smith's Notice of Appeal as a threshold issue.

As outlined, the trial court's order granting summary judgment was signed and file-stamped on June 17, but the trial court clerk apparently did not enter the order into the RJO until July 30.[3] Smith therefore claims that the time within which she could file a Notice of Appeal should run from July 30. Deem argues that the trial court's signing of the order on June 17 establishes the relevant date. Before we get to this issue, however, we address

the apparently interlocutory nature of this appeal.

Indiana Appellate Rule 9(A) governs appeals from final judgments. Appellate Rule 14 governs interlocutory appeals. A judgment is a final judgment if:

"(1) it disposes of all claims as to all parties;

(2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;

(3) it is deemed final under Trial Rule 60(C);

(4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5) it is otherwise deemed final by law."
Ind. Appellate Rule 2(H).

Here, defendants Cincinnati Insurance and Billy and Chad Collins had been dismissed from the action. At the time of the summary judgment, the only remaining defendants were Deem and Stafford–Ellis. The last mention of Stafford–Ellis in the CCS was a notation that she failed to appear at a hearing held on August 21, 2003. The trial court's order on summary judgment addressed the claims against Deem only. The summary judgment order thus did not then dispose of all claims as to all parties because Stafford–Ellis was still a party to the action, and there is no indication in the CCS that she had been

---

**3.** This is, at least, how the parties interpret the July 30 CCS entry. It is the duty of the clerk to enter the trial court's orders and judgments into the RJO. *See* Ind. Trial Rule 58(A). Thus, if the clerk first received the June 17 order on July 30, it could not have

been put into the RJO until then. Moreover, the July 30 CCS entry contains the line "OB 67 PG 217–A," which we take to be a reference to the "order book," the former name for the RJO. *See Conner v. Conner*, 666 N.E.2d 921, 924 (Ind.Ct.App.1996).

defaulted or otherwise dismissed. The summary judgment was therefore not final under Appellate Rule 2(H)(1), and the definitions in Appellate Rule 2(H)(3) through (5) do not appear to be applicable. However, the trial court's order on summary judgment contains the following provision:

> "IT IS THEREFORE, ORDERED, AJUDGED, and DECREED that summary judgment is granted in favor of Defendant Natalie Deem as against Courtney Smith's Second Amended Complaint. *There being no just reason for delay, entry of judgment is expressly so directed.*" App. at 30 (emphasis supplied).

This tracks the language of Rule 2(H)(2). It would thus appear that the trial court intended its order to be a final judgment as to Smith's claims against Deem.

Difficulties arise, however, from what happened after the trial court's order was rendered. Instead of filing a Notice of Appeal from this apparently final judgment, Smith filed on July 14, 2004 a petition for the trial court to certify its order for interlocutory appeal. *See* App. R. 14(B) (governing discretionary interlocutory appeals).[4] Indeed, the trial court certified its order for interlocutory appeal on August 11, 2004. The next step in the interlocutory appeal process would have been for Smith to request this court to accept jurisdiction of the appeal within thirty days of the trial court's certification. *See* App. R. 14(B)(2)(a). But that is not what happened here. Instead, on the same day the trial court certified the issue

for interlocutory appeal, Deem filed a "response" to the petition to certify the order for interlocutory appeal, and on August 23, Smith filed a motion for the trial court to withdraw the certification. Instead of waiting for the trial court to rule on this motion, Smith simultaneously filed a Notice of Appeal which initiated the current appeal.[5] Thus, the trial court's summary judgment order was certified for interlocutory appeal and was never "de-certified" before Smith filed a Notice of Appeal. This procedural history supports a conclusion that, at least initially, Smith and perhaps the trial court considered the order granting summary judgment to be interlocutory, but that at a later time Smith decided to treat the order as a final judgment and proceeded accordingly.

■ Upon review of the record, we conclude that the trial court's order on summary judgment, although not disposing of all claims as to all parties, was a final judgment pursuant to Appellate Rule 2(H)(2) because in the order the trial court expressly determined in writing that there was no just reason for delay and entered judgment accordingly.[6] *See Peals v. County of Vigo*, 783 N.E.2d 781, 783 (Ind. Ct.App.2003) (trial court's summary judgment was final pursuant to Appellate Rule 2(H) where order expressly determined that there was no just reason for delay and expressly directed entry of judgment as to all claims filed by plaintiff against one defendant).

4. The present case does not fit within Appellate Rule 14(A)'s definition of interlocutory trial court decisions appealable as a matter of right.

5. Presumably, Smith wanted to file her Notice of Appeal within thirty days of July 30, 2004, the date she now claims was the date the trial court "entered" the judgment for purposes of appeal.

6. Of course if the trial court's order were not a final judgment, and Smith was correct in pursuing the interlocutory appeal, the time has long since passed for Smith to petition this court to accept jurisdiction. *See* App. R. 14(B)(2)(a).

■ Treating the summary judgment as a final judgment, the question remains as to when the judgment was "entered" for purposes of the timeliness of the current appeal. Appellate Rule 9(A) requires that a Notice of Appeal from a final judgment be filed within thirty days after the "entry" of the final judgment, or within thirty days of the ruling on a motion to correct error,[7] if such a motion was filed.

Both Smith and Deem cite cases which appear to support their respective positions. In support of her position that the thirty-day time limit does not begin to run until the trial court's order has been entered into the RJO, Smith cites the recent cases of *In re Estate of Hester*, 780 N.E.2d 848 (Ind.Ct.App.2002), *trans. denied*, and *Wyrick v. Gentry*, 796 N.E.2d 342 (Ind.Ct. App.2003).

In *Hester*, the appellee filed a motion to dismiss the appeal claiming that the trial court "entered final judgment" on August 28, 2002, but that the appellants did not file their notice of appeal until October 3, 2002, outside the thirty-day time limit of Appellate Rule 9(A)(1). The final order was signed by the trial court on August 28 and was file-stamped as being filed in open court on August 28. Further, according to order of this court in *Hester*, the CCS showed that the order was entered on August 28. *Id.* at 849. The appellants claimed that the order was not "entered" until September 3, and that their Notice of Appeal was therefore timely. To support their claim, the appellants submitted an affidavit of the trial court clerk wherein she attested that she received the case file and order on September 3 and "entered" the order into the computer on that date, but did so reflecting the signed date of August 28. Based upon this evidence, the *Hester* court issued the following order:

" 1) '[U]pon a decision of the court, the court shall promptly prepare and sign the judgment, and the clerk shall thereupon enter the judgment in the Record of Judgments and Orders and note the entry of the judgment in the Chronological Case Summary and Judgment Docket.' Ind. Trial Rule 58(A).

2) 'A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment.' Ind. Appellate Rule 9(A)(1).

3) The final order was signed by the trial court on August 28, 2002, it was file-stamped as filed in open court on August 28, 2002, and the chronological case summary shows that it was entered on August 28, 2002.

4) Therefore, even though the probate clerk made a computer record of the judgment on September 3, 2002, judgment was entered on August 28, 2002. Accordingly, the Appellants' October 3, 2002, Notice of Appeal was not timely, and this appeal is DISMISSED WITH PREJUDICE . . . ."

*Id.*

In *Wyrick, supra*, the trial court's order granting summary judgment was "dated and file-stamped 'November 21, 2002,' " but the trial court clerk did not enter the order into the RJO until the following day. 796 N.E.2d at 344. The appellants therefore claimed that they had thirty days from November 22 to file their motion to correct error, i.e., until December 22. The appellees argued that the thirty-day clock began to run when the trial court clerk made a CCS entry on November 20 indicating that the trial court had granted the motion for summary judgment and that notice thereof was mailed to counsel.

---

7. Specifically, if a motion to correct error is filed, a Notice of Appeal must be filed within thirty days after the court's ruling on such motion, or thirty days after the motion is deemed denied by operation of Trial Rule 53.3, whichever occurs first.

Thus, the appellees argued that the appellants' motion to correct error was untimely, that the trial court's ruling thereon was a nullity, and that the subsequent notice of appeal was untimely. The *Wyrick* court analyzed the *Hester* decision stating, "in *Hester,* we concluded, 'even though the probate clerk made a computer record of the judgment on September 3, 2002, judgment was *entered* [into the RJO] on August 28, 2002.' ..." 796 N.E.2d at 345 (emphasis and alterations in original).[8] The *Wyrick* court concluded that the judgment in that case was "signed and filed" on November 21, 2002, but that:

> "the trial court clerk did not enter the judgment into the RJO until November 22, 2002. Therefore the entry of final judgment, for purposes of filing a Motion to Correct Error[,] was not made until November 22, 2002.... Thus [the appellants] timely filed their Motion to Correct Error ...." *Id.* at 345–46.

Based upon this case law, Smith argues that the trial court's order in the present case was not entered into the RJO until July 30, 2004, and therefore for purposes of filing a Notice of Appeal, the order was not "entered" for purposes of Appellate Rule 9(A) until that date, despite its having been signed and file-stamped on June 17, 2004. If so, her Notice of Appeal was timely when filed on August 23, 2004.

Deem cites authority for the proposition that the date from which the appellate time limits begin to run is that on which the trial court renders judgment. In *State v. Bridenhager,* 257 Ind. 544, 276 N.E.2d 843 (1971), *clarified upon reh'g on other grounds,* 257 Ind. 699, 279 N.E.2d 794 (1972), the question of whether the appellant's appeal had been timely filed was addressed. The appellee-plaintiffs in *Bridenhager* had obtained summary judgment, and the defendant timely filed a motion to correct error, which was overruled by the trial court on May 3, 1971. The ruling on the motion to correct error was entered into the "minutes of the meeting"[9] which were delivered to the court clerk, and notice was sent to counsel, but the ruling was not entered into the order book. The appellant filed a praecipe on June 7, 1971 and filed the record on August 3, 1971. Appellees sought to have the appeal dismissed because the record had not been filed within ninety days of the denial of the required motion to correct error. One of the grounds upon which the appellant sought to avoid the consequences of the late filing of the praecipe was that "no order book entry ha[d] been made with respect to the overruling of the motion to correct errors, and that accordingly, the motion had not yet been ruled upon." 257 Ind. at 546, 276 N.E.2d at 844. Our Supreme Court stated:

> " 'Although ... a court speaks by its record, which is its order book, and the order book entries are not dependent for their stability or validity on outside memoranda; and for many purposes, a judgment, until entered, is not complete, perfect and effective until this is done; it, nevertheless, is effective between the parties from the time of rendition.' " *Id.*

---

8. We note that the *Wyrick* court appears to have broadly read the published order of this court in *Hester.* The *Hester* court did state that the CCS indicated that the trial court's judgment was "entered" on August 28, but the *Wyrick* court gratuitously inserted the words "into the RJO" into the quoted material from *Hester.* This insertion suggests that the *Hester* order was concerned about the date the judgment was entered into the RJO.

The published order in *Hester,* however, belies such a conclusion in that the court was concerned not with the date the clerk received the order, but the date on which the CCS indicated that the order was "entered," which was the same day the trial court signed and filed the order.

9. The Superior Court of Marion County had sat en banc as the Court of Claims.

The court stated that "rendition of the judgment is the act of the judge, judicial, but the entry thereof the act of the clerk, ministerial, and the judge's signature is likewise a ministerial attestation to the correctness of the clerk's transcription of a judgment complete in itself when pronounced by the judge." 257 Ind. at 546–47, 276 N.E.2d at 844 (quoting *Bailer v. Dowd*, 219 Ind. 624, 627, 40 N.E.2d 325, 326 (1942)). The court further observed that the absence of an order book entry is correctable by a nunc pro tunc entry, which when made takes effect as of the time of the original judgment. *Id.* Based in part upon this reasoning, the court dismissed the appeal. 257 Ind. at 547, 276 N.E.2d at 845.[10] *See also Bailer*, 219 Ind. 624, 40 N.E.2d 325; *Bd. of Comm'rs of Vigo County v. City of Terre Haute*, 147 Ind. 134, 46 N.E. 350 (1897); *Mayer v. Haggerty*, 138 Ind. 628, 38 N.E. 42 (1894); *Anderson v. Mitchell*, 58 Ind. 592 (1877); *State ex rel. Bernard v. Geckler*, 98 Ind. App. 436, 189 N.E. 842 (1934); *Pittsburgh, C., C. & St. L. Ry. Co. v. Johnson*, 49 Ind.App. 126, 93 N.E. 683 (1911); *Reading v. Brown*, 19 Ind.App. 90, 49 N.E. 41 (1898) (all standing for the proposition that the time for appeal runs from the date of rendition of the judgment, not the date of its entry).

More recently, in *Tancos v. A.W., Inc.*, 502 N.E.2d 109 (Ind.Ct.App.1986), the trial court entered judgment upon a jury's verdict in favor of the defendant on November 16, 1984. Both parties filed motions to correct error on January 15, 1985, and the trial court held a hearing on these motions on February 2, 1985. On May 6, 1985, the trial court granted the plaintiff's motion to correct error. The trial court's order was not entered into the order book as a result of being misfiled and temporarily lost.

The defendant did not receive notice of the trial court's actions, and on May 8, 1985, ninety-five days after the hearing on the motion to correct error, filed a praecipe which requested the court clerk to enter a record that the motion to correct error had been deemed denied pursuant to Trial Rule 53.3. The court clerk made the "deemed denied" entry on May 24, 1985. On June 6, 1985, however, the clerk found the misfiled May 6 order. The clerk then made an entry purportedly vacating both the May 8 filing of the defendant's praecipe and the May 24 entry deeming the motion to correct error denied and entered the trial court's May 6 order into the order book. On June 28, 1985, the defendant filed a motion to vacate the May 6 order granting the motion to correct error. On July 5, 1985, the defendant filed a praecipe and on July 29, 1985 filed a motion to "remove consideration of the motion to vacate the May 6th judgment and order from the trial judge . . . ." 502 N.E.2d at 113. A special judge was appointed to hear the issue and ruled that the trial court's May 6 order was valid.

The defendant appealed, claiming that the May 6 order was invalid in that his Trial Rule 53.3 motion divested the trial court of jurisdiction. The Fourth District of this court disagreed, citing *Bridenhager* for the proposition that a judgment is effective between the parties from the time it is rendered and that the entry into the order book is a ministerial function of the clerk. *Tancos*, 502 N.E.2d at 113. Therefore, the court held that the trial court's judgment was rendered and became effective as between the parties on May 6, and that the appellant's T.R. 53.3 motion was not filed until after that date and was too late. The court, however, rejected the ap-

---

10. It may be noted that the dismissal of the appeal was somewhat curiously ordered in an opinion by one Justice, joined only by one other Justice. The Chief Justice and the other two Justices did not participate.

pellee-plaintiff's claim that because the judgment was effective on May 6, the appellant-defendant had failed to timely perfect an appeal. The court noted that although the judgment was rendered on May 6, the appellant had no notice, constructive or actual, thereof until it was entered into the order book on June 6. *Id.* at 113–14. Because the appellant filed his praecipe within thirty days of the date when he received notice, the court heard the appeal. *Id.* at 114.

In *State v. Allen,* 646 N.E.2d 965 (Ind. Ct.App.1995),[11] the trial court granted the defendant's motion to dismiss on June 30, 1993. However, the order was never entered on the clerk's docket, and the State did not receive notice of the order until July 30, 1993. On August 2, 1993, the trial court acknowledged that its earlier order had never been properly entered and entered the order nunc pro tunc as of June 30. The State appealed. Upon appeal, the appellee-defendant claimed that the appeal was untimely in that the State should have filed its praecipe within thirty days of June 30, the date the trial court granted the motion. The *Allen* court cited former Appellate Rule 2(A), which required that the praecipe be filed within "thirty days 'after the *entry* of a final judgment ....'" *Id.* at 967 (emphasis in original). The court concluded that although the trial court's ruling was effective as of June 30, the date the motion was granted, it was not entered until August 2, 1993, when the trial court made the entry nunc pro tunc. *Id.* The *Allen* court recognized, however, that had the State received actual notice of the trial court's June 30 order it "might be constrained to hold differently." *Id.* Because there was no affirmative evidence in the record that the State did receive notice prior to July 30, the court held that the praecipe was timely filed. *Id. See also Conner v. Conner,* 666

N.E.2d 921 (Ind.Ct.App.1996) (citing *Bridenhager* and *Tancos* in holding that dissolution decree signed in 1985 but not entered into order book was a final judgment "effectively entered" where docket entry was clear that judge promptly prepared and signed decree, terms of decree were in docket entry, and neither party claimed that they had failed to receive a copy of the decree or were unaware of its terms, and holding that omission of decree from order book was thus a "ministerial" defect).

Upon review of the case law, we must acknowledge that it is not entirely clear as to which date from which the thirty-day time limit begins to run: the date the trial court judge renders judgment or the date the clerk enters judgment into the RJO. Most of the cases, including *Bridenhager,* which hold that the time for appeal runs from the date of rendition of the judgment, were decided prior to the adoption of the Rules of Appellate Procedure in 1972. Before 1972, the applicable rule did not mention the time running from the date of "entry" of the judgment. *See* Supreme Court Rule 2–2 (Burns Code Ed. Repl. 1946, 1967) (stating that to initiate an appeal the assignment of errors and transcript must be filed with the Clerk of the Supreme Court "within 90 days from the date of the judgment or the ruling on the motion for a new trial ...."). Prior to Supreme Court Rule 2–2, the applicable statute specifically mentioned rendition of judgment as the triggering event for the appellate time limits. *See* Burns' § 2–3202 (1933) ("Appeals in all [civil] cases hereafter tried must be taken within one hundred and eighty [180] days from the time the judgment is rendered."); Ind. Revised Statutes § 561 (1852) ("Appeals in all [civil] cases hereafter tried, must be taken within three years from the time the judg-

**11.** The author of this opinion was the author of the *Allen* opinion.

ment is rendered ....").  It is therefore not surprising that cases decided under these provisions held that rendition of judgment was the date on which the appellate time limits began to run.

After the Appellate Rules were adopted in 1972, the original version of Appellate Rule 2(A) did not mention the "entry" of judgment, but instead stated that the praecipe "shall be filed within thirty [30] days after the court's ruling on the motion to correct errors" or the right to appeal was forfeited.  (Burns Code Ed. Supp.1971).  It was not until the amendments effective in 1990 that Appellate Rule 2(A) was amended to state, "The praecipe shall be filed within thirty (30) days after the *entry* of a final judgment or an appealable final order .... Unless the praecipe is filed within such time period the right to appeal will be forfeited." [12] (emphasis supplied).  This part of the Rule remained unchanged until the adoption of the current Rules of Appellate Procedure, but the current Rule did not effect any substantive change to the relevant language.  Indeed, Appellate Rule 9(A) now states that unless an appropriate Motion to Correct Error has been filed, the Notice of Appeal must be filed "within thirty (30) days after the entry of a Final Judgment" and that if the Notice of Appeal is not timely filed then the right to appeal is forfeited.[13]

Faced with the language of the current rule, the *Wyrick* court explicitly held that the "entry" mentioned in Appellate Rule 9(A) is entry into the RJO. Although *Allen* would seem to be in agreement with the holding in *Wyrick*, as earlier noted that court did recognize that had the appellant had actual notice of the trial court's ruling, its decision would likely have been different.  *Tancos* acknowledged that the trial court's judgment was effective between the parties from rendition, but refused to dismiss the appeal because the appellant filed his praecipe within thirty days after he received notice of the trial court's judgment.

We conclude that, given the procedural history of the present case and the applicable case law, the notice-based approach of the *Tancos* and *Allen* decisions is the best solution.  We do not think that *Wyrick* should be read to support the proposition that the time limit for appeal is tolled indefinitely where the trial court clerk has failed to perform the ministerial act of entering the order into the RJO.[14] We recognize that, according to the decision in *Bridenhager*, the trial court's order is effective between the parties from the date it is rendered.  Nevertheless, we conclude that for purposes of appeal, the change in the language of the appellate rule in 1990 to use the word "entry" indicated a change as to when the thirty-day time limit would begin to run.  Therefore, as a general proposition, the "entry" mentioned in Appellate Rule 9(A) is entry into the RJO.[15]

In situations where the trial court clerk performs his or her duties under Trial Rule 58 and promptly enters the trial court's order or judgment into the RJO,

12.  During the period that the original version of Rule 2(A) was in effect, the filing of a Motion to Correct Error was a prerequisite to perfection of an appeal.  4 WILLIAM F. HARVEY INDIANA PRACTICE § 59.1, p. 74 (3d ed.2003).

13.  Appellate Rule 9(A)(5) specifically states, "Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided in [Post–Conviction Rule] 2."

14.  Such a hyper-technical reading of Appellate Rule 9(A) would allow a party to appeal years after rendition of judgment if the clerk failed to enter the judgment into the RJO until years after rendition.  This is not a far-fetched hypothetical situation, for the judgment at issue in *Conner, supra*, was not entered into the order book for several years.

15.  Indeed, we find it telling that for appeals from the denial of a motion to correct error, under former Appellate Rule 2(A) and current Appellate Rule 9(A), the thirty-day time limit runs from the date of the trial court's "ruling" on the motion.

the rendition/entry date would be the date from which the appellate time limits run.[16] Moreover, pursuant to Trial Rule 72(D), immediately upon entry of a ruling, order, or judgment into the RJO, the clerk *shall* serve a copy of the entry to the parties. Thus, when an order or judgment is timely entered, the parties should also receive timely notice thereof.[17] When the trial court clerk promptly performs his or her duties under these rules, rendition, entry, and notice should be nearly simultaneous.

In cases where, for whatever reason, there is a delay between the trial court's rendition of judgment and the entry into the RJO, as is the case here, several things can be said. First, the judgment or order is effective as between the parties from the date it is rendered. *See Bridenhager,* 257 Ind. at 546, 276 N.E.2d at 844; *Allen,* 646 N.E.2d at 967; *Tancos,* 502 N.E.2d at 113. In addition, the date of entry into the RJO is generally the date from which the appellate time limit begins to run. *See Wyrick,* 796 N.E.2d at 345–46. Indeed, upon entry, the parties are required to be given notice. *See* T.R. 72(D). But where, as here, a party does have notice of the trial court's ruling before its entry into the RJO, we see no reason to justify allowing that party to delay filing a Notice of Appeal within thirty days of the date on which the party received notice simply because the clerk has not performed a ministerial task. *Cf. Allen,* 646 N.E.2d at 967; *Tancos,* 502 N.E.2d at 113.

Here, there can be no doubt that Smith had notice of the trial court's rendition of judgment before the clerk entered it into the RJO. Indeed, Smith filed a petition to certify the trial court's order for interlocutory appeal on July 14—before the court clerk had entered the order into the RJO on July 30. Thus Smith knew of the trial court's order by the very latest on July 14. After the trial court certified the order for interlocutory appeal, Smith did not petition this court to accept jurisdiction of the appeal, but rather moved to withdraw the certification; and instead of awaiting the trial court's ruling on such a motion to withdraw, she filed a notice of appeal on August 23—sixty-seven days after the rendition of judgment and forty days from the date by which she must have known of the trial court's order.[18] We therefore conclude that Smith did not timely file her Notice of Appeal.[19]

The appeal is dismissed.

NAJAM, J., and RILEY, J., concur.

16. Smith claims that whereas the trial court clerk now has a duty to enter judgment into the RJO, "[p]rior to the amendment the clerk did not have duty to enter a judgment into the order book ...." Appellant's Reply Br. at 1. However, the 1985 version of Trial Rule 58 cited in *Conner* stated, "upon a decision announced, the court shall promptly prepare and sign the judgment, *and the clerk shall thereupon enter it.*" (emphasis supplied). Thus, the distinction Smith attempts to make is without effect.

17. In addition to the mailing of the order pursuant to Trial Rule 72(D), the clerk is required by Trial Rule 58 to "note the entry of the judgment in the Chronological Case Summary and Judgment Docket." In *Trojnar v. Trojnar,* 698 N.E.2d 301, 304 (Ind.1998), our Supreme Court reiterated the proposition that lawyers have a duty to regularly check the records of each court in which they have a pending case. However, *Trojnar* also recognized that the requirements of Trial Rule 72 have lessened this onerous, if not impractical, burden and stated that lawyers may rely upon the clerk to mail the trial court's rulings. *Id.*

18. We also find it telling that Smith's Notice of Appeal states that she is appealing the trial court's "Order Granting [Deem]'s Motion for Partial Summary Judgment: June 17, 2004." App. at 173. Thus, Smith's Notice of Appeal itself claims to be appealing from an order which at the time of the filing of the Notice was sixty-seven days old.

19. We emphasize that our holding is limited to situations in which the party seeking to

appeal has notice of the trial court's judgment or order before the order is entered into the RJO. Trial Rule 72(E) deals with the effect of lack of notice of the entry of a ruling, order, or judgment upon the time limits to challenge the ruling, order, or judgment:

"The lack of notice or the lack of the actual receipt of a copy of the entry from the Clerk shall not affect the time within which to contest the ruling, order or judgment, or authorize the Court to relieve a party of the failure to initiate proceedings to contest such ruling, order or judgment, except as provided in this section...." T.R. 72(E).

Further, pursuant to Rule 72(E), if, and only if, the mailing of a copy of the entry by the clerk is not evidenced by a note made upon the CCS, a party may move the court, upon good cause shown, to grant an extension of any time limitation within which to contest such ruling, order, or judgment. *See Collins v. Covenant Mut. Ins. Co.*, 644 N.E.2d 116, 117–18 (Ind.1994). Trial Rule 72(E) thus seems concerned with the effect of lack of notice of the clerk's entry. In the case at bar, we are concerned with a party who had notice of the trial court's rendition before entry by the clerk.