## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 10:05 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David T. A. Mattingly
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Longer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2015

Court of Appeals Case No. 79A04-1410-CR-464

Appeal from the Tippecanoe Superior Court.

The Honorable Randy Williams, Judge.

Cause No. 79D01-1403-FB-3

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Ronald L. Longer (Longer), appeals his sentence following his conviction for three Counts of robbery while armed with a deadly weapon, Class B felonies, Ind. Code § 35-42-5-1 (2013); and one Count of carrying a handgun without a license with a prior felony conviction, a Class C felony, I.C. §§ 35-47-2-1; -23(c)(2)(B) (2013).

We affirm.

## ISSUES

Longer raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its sentencing discretion by failing to consider as a mitigating circumstance that incarceration would result in undue hardship to Longer's child; and

(2) Whether Longer's sentence is inappropriate in light of the nature of the offense and his character.

The State raises one issue on cross-appeal, which we restate as follows: Whether Longer's appeal should be dismissed due to his belated filing of the Notice of Appeal.

## FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on March 14, 2014, a black male dressed in a black hooded sweatshirt and jeans walked into the Village Pantry in Lafayette,

Tippecanoe County, Indiana, and pointed a black and chrome-colored handgun at the clerk, Rex Nipp (Nipp). Concerned for his safety, Nipp complied with the gunman's demand for money from the cash register and the safe. After the gunman absconded with $166.10, Nipp reported the incident to the Lafayette Police Department.

[6] Six days after the robbery at the Village Pantry, shortly after 3:00 a.m., a black male entered the BP Amoco gas station in Lafayette, dressed in a black hooded sweatshirt and black jeans and carrying a black and silver-colored handgun. The gunman instructed the clerk, Tasha Nethercutt (Nethercutt), to give him the money from the cash register. Nethercutt complied, giving the suspect $468.40. Thereafter, the male ran out of the gas station and Nethercutt reported the robbery to the Lafayette Police Department. A few minutes later, a black male wearing dark colored pants and a black hooded sweatshirt approached the Circle K gas station in Lafayette. The clerk, Michael Mowery (Mowery), was outside the store when the male brandished his handgun and demanded money. Mowery noted that the handgun was chrome-colored with a black grip. Mowery went into the gas station, and the gunman followed. At the gunman's instruction, Mowery gave him the contents of the cash register, $47.00, after which the suspect fled from the store.

[7] Lieutenant Ricks of the Tippecanoe Sheriff's Department was patrolling in the vicinity of the BP Amoco and Circle K gas stations at the time of the robberies. After observing a vehicle with a driver matching the suspect's description—later identified as Longer—Lieutenant Ricks initiated a traffic stop. Other police

officers arrived to assist as Longer was removed from the vehicle and the vehicle was searched. The officers recovered a black and silver semiautomatic handgun from the sidewalk next to the vehicle and also found more than $500 in cash hidden under a seat in the vehicle. Nethercutt was brought to the scene for a show-up identification, and she positively identified Longer as the robbery suspect. Mowery was also transported to the scene, but he did not recognize Longer. However, a police officer reviewed the security footage from the Circle K robbery and discerned that the robbery suspect wore very distinct shoes, which were identical to Longer's shoes.

[8] After receiving his *Miranda* warnings, Longer agreed to speak with the police. Longer admitted that he had robbed the BP and Circle K gas stations because he was addicted to crack cocaine. Longer also admitted to having robbed the Village Pantry the previous week. Longer provided specific details about how he committed each robbery, which matched the narratives provided by the clerks. Longer further conceded that he had thrown the handgun out of his window upon seeing the police vehicles.

[9] On March 21, 2014, the State filed an Information, charging Longer with Count I, robbery while armed with a deadly weapon, a Class B felony, I.C. § 35-42-5-1 (2013); Count II, theft, a Class D felony, I.C. § 35-43-4-2(a) (2013); Count III, robbery while armed with a deadly weapon, a Class B felony, I.C. § 35-42-5-1 (2013); Count IV, theft, a Class D felony, I.C. § 35-43-4-2(a) (2013); Count V, robbery while armed with a deadly weapon, a Class B felony, I.C. § 35-42-5-1 (2013); Count VI, theft, a Class D felony, I.C. § 35-43-4-2(a) (2013);

and Count VII, carrying a handgun without a license, a Class A misdemeanor, I.C. §§ 35-47-2-1; -23(c) (2013). On April 30, 2014, the State charged Longer with Count VIII, carrying a handgun without a license with a prior felony conviction, a Class C felony, I.C. §§ 35-47-2-1; -23(c)(2)(B) (2013).

[10] On July 30, 2014, pursuant to a plea agreement, Longer pled guilty to Counts I, III, V, and VIII, with sentencing left to the discretion of the trial court. In exchange, the State dismissed the remaining charges. The trial court accepted the plea agreement and entered a judgment of conviction on three Class B felonies and one Class C felony.

[11] On August 29, 2014, the trial court conducted a sentencing hearing. The trial court identified Longer's criminal history involving the use of a handgun; the fact that he was on probation at the commission of the instant offenses; his history of substance abuse; the fact that there were multiple victims; and the impact on the victims as aggravating circumstances. The trial court considered Longer's guilty plea and acceptance of responsibility; the support of his family and friends; his cooperation with law enforcement; and his age (nineteen years old at time of robberies) as factors tending to warrant a mitigated sentence. However, the trial court found that the aggravating factors outweighed the mitigating factors and, as such, sentenced Longer to thirteen years each on Counts I, III, and V. As to Count VIII, the trial court imposed a sentence of five years. The trial court ordered concurrent sentences for Counts III and V, which would run consecutively to Counts I and VIII, for an aggregate sentence

of thirty-one years, with twenty-six years executed in the Indiana Department of Correction and five years suspended to probation.

[12] On October 2, 2014, Longer filed his Notice of Appeal. On March 13, 2015, the State filed a motion to dismiss Longer's appeal, alleging that Longer's Notice of Appeal was not filed within the requisite thirty-day period following the August 29, 2014 sentencing order. On March 18, 2015, Longer filed a response, arguing that his Notice of Appeal was filed within thirty days of the date the sentencing order was added to the Chronological Case Summary (CCS). On March 23, 2015, the motions panel of this court denied the State's motion to dismiss.

[13] Longer now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Timeliness of Notice of Appeal*

[14] As the State has raised a threshold issue of procedural error on cross-appeal, we will address it first. The State claims that Longer's appeal should be dismissed because he failed to timely file his Notice of Appeal. Even though our motions panel denied the State's motion to dismiss, the State is not precluded from again presenting this argument on appeal; nor are we precluded from reconsidering the ruling of the motions panel. *D.C., Jr. v. C.A.*, 5 N.E.3d 473, 475 (Ind. Ct. App. 2014). Indiana Appellate Rule 9(A)(1) provides that in order to initiate an appeal, a party must file "a Notice of Appeal with the Clerk . . . within thirty (30) days after the entry of a Final Judgment is noted in the

[CCS]." If the Notice of Appeal is not timely filed, "the right to appeal shall be forfeited except as provided by [Post-Conviction Rule] 2." Ind. Appellate Rule 9(A)(5).

"In a criminal matter, sentencing is a final judgment." *Haste v. State*, 967 N.E.2d 576, 576 (Ind. Ct. App. 2012). In this case, a September 4, 2014 CCS notation indicates that the trial court entered its sentencing order on August 29, 2014. Thus, the State posits that Longer's Notice of Appeal was due to be filed no later than thirty days after the trial court's entry of final judgment—that is, September 29, 2014.[1] On the other hand, Longer insists that because the entry of the sentencing order was not actually reflected in the CCS until September 4, 2014, he had until October 6, 2014, to file his Notice of Appeal.[2] The CCS indicates that Longer's Notice of Appeal was filed on October 3, 2014; however, the actual Notice of Appeal bears a stamp stating that it was filed with the appellate clerk on October 2, 2014.

Prior to January 1, 2011, Indiana Appellate Rule 9(A)(1) provided that a party must initiate an appeal by filing a Notice of Appeal within thirty days of the entry of final judgment. At that time, "entry" referred to "entry into the [Record of Judgments and Orders (RJO)]." *Smith v. Deem*, 834 N.E.2d 1100,

---

[1] Under the State's argument, Longer's thirty-day period would have expired on Sunday, September 28, 2014. Pursuant to Indiana Appellate Rule 25(B), Longer's deadline would have been extended until the end of the next business day, Monday, September 29, 2014.

[2] Under this scenario, Longer's thirty-day period would have expired on Saturday, October 4, 2014, which means that his Notice of Appeal would have been due no later than Monday, October 6, 2014. App. R. 25(B).

1109 (Ind. Ct. App. 2005), *trans. denied*. In *Smith*, the trial court clerk did not record the trial court's judgment in the RJO until more than a month after the judgment had been signed and file-stamped. *Id.* at 1106. However, this court noted that

> [i]n situations where the trial court clerk performs his or her duties under Trial Rule 58 and promptly enters the trial court's order or judgment into the RJO, the rendition/entry date would be the date from which the appellate time limits run. . . . In cases where, for whatever reason, there is a delay between the trial court's rendition of judgment and the entry into the RJO, . . . the judgment or order is effective as between the parties from the date it is rendered. . . . [W]here, as here, a party does have notice of the trial court's ruling before its entry into the RJO, we see no reason to justify allowing that party to delay filing a Notice of Appeal within thirty days of the date on which the party received notice simply because the clerk has not performed a ministerial task.

*Id.* at 1109-10. Accordingly, the *Smith* court dismissed the appeal due to the untimely Notice of Appeal. *Id.* at 1110.

[17] The current version of Indiana Appellate Rule 9(A)(1) requires the Notice of Appeal to be filed within thirty days after the entry of final judgment is noted in the CCS, but the rationale of *Smith* remains applicable. Longer was present at the sentencing hearing when the trial court entered its order; thus, there is no doubt that he had notice of the entry of final judgment on August 29, 2014. Furthermore, even though the CCS notation was made on September 4, 2014, it very clearly states that final judgment was entered on August 29, 2014. Thus, we find that Longer's October 2, 2014 Notice of Appeal was untimely filed, and he has forfeited his right to appeal. However, his forfeiture does not necessarily

"deprive the appellate courts of jurisdiction to entertain the appeal. Rather, the right to appeal having been forfeited, the question is whether there are extraordinarily compelling reasons why this forfeited right should be restored." *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014). As stated by the Indiana Supreme Court, "[O]ur appellate rules exist to facilitate the orderly presentation and disposition of appeals . . . and [as] our Court of Appeals has noted 'we are mindful that our procedural rules 'are merely means for achieving the ultimate end of orderly and speedy justice.''" *Id.*

[18] In this case, Longer has not proffered any extraordinarily compelling reasons for permitting his appeal to proceed in the absence of a timely-filed Notice of Appeal. Nevertheless, we are mindful of the fact that Longer expressed his desire to appeal his sentence directly to the trial court on September 5, 2014—well within the thirty-day timeframe.[3] That same day, the trial court appointed appellate counsel to perfect the appeal. If we were to foreclose Longer's direct appeal, a petition for post-conviction relief would inevitably follow. In the interests of justice, efficiency, and the orderly disposition of this appeal, we elect to address Longer's case on its merits.

## II. *Abuse of Sentencing Discretion*

[19] Longer claims that the trial court abused its discretion in sentencing him by failing to consider a mitigating circumstance that is clearly supported by the

---

[3] We note that Longer's Notice of Desire to Appeal should not be construed as satisfying the requirement to file a Notice of Appeal pursuant to Indiana Appellate Rule 9(A).

record—specifically, that his incarceration would result in undue hardship to his minor child. Sentencing decisions are reserved to the sound discretion of the trial court and are reviewed on appeal only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007). It is an abuse of discretion if the trial court's "reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Reese v. State*, 939 N.E.2d 695, 703 (Ind. Ct. App. 2011), *trans. denied*.

[20] When imposing a sentence on a felony offense, the trial court is required to provide a statement that includes "a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence." *Anglemyer*, 868 N.E.2d at 490. "If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating." *Id.* Thus, with respect to sentencing, there are numerous ways in which a trial court might abuse its discretion, including by failing to enter any sentencing statement, entering a sentencing statement that includes reasons for imposing a sentence which are unsupported by the record, omitting reasons that are clearly supported by the record and have been advanced for consideration, or the reasons given are improper as a matter of law. *Id.* at 490-91. If we find an abuse of discretion, we will remand for resentencing "if we cannot say with confidence that the trial

court would have imposed the same sentence had it properly considered the reasons that enjoy support in the record." *Id.* at 491.

[21] In this case, Longer claims that the trial court abused its discretion by failing to consider the fact that incarceration would result in undue hardship to his child as a mitigating factor. A sentencing court is required to "consider all evidence of mitigating factors offered by a defendant, [but] the finding of mitigating factors rests within the court's discretion." *Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013). Additionally, while

> the failure to find mitigating circumstances that are clearly supported by the record may suggest they were overlooked, a trial court does not have to afford the same credit or weight to the proffered mitigating circumstances as a defendant may suggest. Moreover, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.

*McBride v. State*, 992 N.E.2d 912, 920 (Ind. Ct. App. 2013) (citation omitted), *reh'g denied, trans. denied*. "'A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance.'" *Guzman*, 985 N.E.2d at 1133 (quoting *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002)). Furthermore, an allegation that the trial court failed to identify a mitigating circumstance "requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* (citing *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999)).

[22] Indiana Code section 35-38-1-7.1(b)(10) (2013) provides that the court *may* consider it to be a mitigating circumstance that "[i]mprisonment of the person

will result in undue hardship to the person or the dependents of the person." Nevertheless, a trial court "is not required to find that a defendant's incarceration would result in undue hardship upon his dependents." *Reese*, 939 N.E.2d at 703. Rather, "'[m]any persons convicted of serious crimes have one or more children [so], absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship.'" *Id.* (quoting *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999)).

[23] During the sentencing hearing, Longer's counsel proffered as a mitigating factor that Longer "has a young child, [eleven] month[s] old." (Tr. p. 34). However, Longer said nothing else to further develop this argument—such as explaining how his incarceration would create an undue hardship on the child. On appeal, Longer now asserts that "[t]he record clearly supports [his] argument that his prolonged incarceration will cause undue hardship to his dependent child and fiancé[e]." (Appellant's Br. p. 8). Specifically, he asserts that he was employed up until the time of his arrest, earning $10.00 per hour, and that he lived in an apartment with his fiancée and child and provided them with financial support. Longer also notes "his hopes of raising his daughter." (Appellant's Br. p. 9).

[24] We find nothing in the record that would support a finding that this is a *significant* mitigating circumstance or that these are special circumstances. Instead, the evidence establishes that Longer's fiancée is employed and that Longer's family has provided support for Longer and his child in the past. Thus, there is no basis for finding that the child will suddenly be left with no means for shelter, food, and clothing in Longer's absence. In addition, during

his police interview, Longer stated that he had committed the three robberies in order to fund his crack cocaine addiction. From this, it is reasonable to infer that Longer's income was devoted more to his own drug habit rather than to the care and support of his child.

[25] Moreover, we find it clear that the trial court did take Longer's proffered mitigating circumstance under consideration, stating, "Okay so your baby is [already] born and you are out flashing guns at innocent people who are trying to earn a living. I don't know how much you were concerned about your child every time that you were using, smoking crack and as I said flashing a gun." (Tr. pp. 46-47). Thus, it is apparent that the trial court found that the effect of Longer's incarceration on his child was not a mitigating circumstance. As it is not the role of this court to reweigh that evidence, we find no abuse of discretion.

## II. *Appropriateness of Sentence*

[26] Longer next claims that his aggregate thirty-one year sentence, of which twenty-six years are executed and five years are suspended, is inappropriate.[4] At the outset, we note that the trial court imposed thirteen-year sentences on each of Longer's three Class B felonies and a five-year term for his Class C felony. *See*

---

[4] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Longer's claim of an inappropriate sentence. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

I.C. § 35-50-2-5 (2013) (requiring a fixed term of six years to twenty years, with the advisory sentence being ten years, on a Class B felony); I.C. § 35-50-2-6 (2013) (requiring a fixed term of two years to eight years, with the advisory term being four years, on a Class C felony). Even where a trial court imposes a sentence that is authorized by statute, as in the present case, we may nevertheless revise the sentence if, "after due consideration of the trial court's decision," we find that it "is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B).

[27] It is well established that "Indiana Appellate Rule 7(B) leaves much to the discretion of appellate courts, but it does not detract from the long-recognized principle that 'sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). Thus, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Our analysis is not intended "to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012)

(internal quotation marks omitted), *reh'g denied*. On review, we focus on the length of the aggregate sentence and how it is to be served. *Cardwell*, 895 N.E.2d at 1224. Longer bears the burden of persuading our court that his sentence is inappropriate. *See Conley*, 972 N.E.2d at 876.

[28] The nature of the offense is that Longer committed three robberies of gas stations/convenience stores while holding the clerks at gunpoint. He purportedly committed these robberies in order to obtain money to purchase crack cocaine. After the police found him in possession of the handgun and cash, Longer confessed to his crimes and subsequently pled guilty.

[29] As to the character of the offender, we note that Longer has a prior felony conviction for reckless discharge of a firearm in Illinois when he was eighteen years old. Although Longer posits that his criminal history is minimal, we find it significant that by age nineteen he had committed multiple gun crimes. In fact, he was still on probation for his first firearm offense at the time he committed the three robberies presently at issue. Moreover, even though Longer has only one prior conviction, it is evident that he has not otherwise led a law-abiding life. Rather, he admittedly began using illegal drugs at age sixteen, including marijuana and crack cocaine. He also admitted that he consumes alcohol—despite the fact that he is not yet twenty-one years of age.

[30] Longer argues that "[t]his court should be reminded that criminal justice in this state is founded on the principle of reformation, and not of vindictive justice." (Appellant's Br. p. 15). It is not this court that is in need of such a reminder.

Rather, we would remind Longer that he was given a chance to reform himself following his first offense with a firearm. Instead, while on probation, he went out on two separate nights and pointed a gun at three different people so that he could further his drug habit. He not only put himself and the store clerks in danger, but he failed to consider the effect that his conduct would have on his then six-month-old child, who will now have to spend the majority of her childhood visiting her father in the Department of Correction. Accordingly, we cannot say that Longer's sentence is inappropriate.

## CONCLUSION

[31] Based on the foregoing, we conclude that Longer's Notice of Appeal was untimely, but we elected to address the merits of his claim notwithstanding his forfeiture. We further conclude that the trial court acted within its discretion in declining to find Longer's incarceration as an undue hardship on his child to be a mitigating circumstance, and Longer's sentence is appropriate in light of the nature of the offense and character of the offender.

[32] Affirmed.

[33] Bailey, J. and Barnes, J. concur