**Brian REESE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 64A03–1001–CR–18.

Court of Appeals of Indiana.

Jan. 12, 2011.

Transfer Denied Feb. 24, 2011.

&#8258;66,

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Brian Reese ("Reese") appeals his convictions for Attempted Murder, a Class A felony,[1] Resisting Law Enforcement, as a Class A misdemeanor,[2] and Carrying a Handgun Without a License, elevated to a Class C felony due to a prior offense.[3] We affirm.

### Issues

Reese presents four issues for review:

I. Whether the trial court abused its discretion by admitting evidence of uncharged bad acts in violation of Indiana Evidence Rule 404(b);

II. Whether the trial court abused its discretion in instructing the jury;

III. Whether there is sufficient evidence to support the conviction for Attempted Murder; and

IV. Whether Reese was properly sentenced.

### Facts and Procedural History

During the afternoon of July 10, 2008, several Indianapolis Metropolitan Police Department ("IMPD") officers were dispatched to the residence of Lona Bishop ("Bishop") in connection with a murder investigation. Reese, who was Bishop's boyfriend and frequent house guest, answered an officer's knock at the door and stated that he needed to put up his dog. He then abruptly shut the door and locked it. Detectives Chad Osborne and Aaron Tevebaugh, who had been stationed at the back of the residence, observed Reese jump out a window and flee, armed with a handgun. The officers gave chase but Reese was able to elude capture.

IMPD officers gathered information as to Reese's identity and usual whereabouts. Based upon this information, several officers began surveillance of Reese's mother, Barbara Reese ("Barbara"). In the early evening hours, Barbara was observed driving a white van to an Indianapolis eastside church where she picked up a person

1. Ind.Code §§ 35–41–5–1, 35–42–1–1.

2. Ind.Code § 35–44–3–3.

3. Ind.Code § 35–47–2–1.

matching Reese's description. IMPD officers followed Barbara's white van and signaled for her to stop. Barbara continued driving for a while, but eventually came to a stop at a Kroger parking lot. Reese jumped out of Barbara's van and fled.

Several officers gave chase, including Officers Jerry Piland, Jeff Wood, John Howard, Steven Scott, and Jim Dora. Officer Jason Fishburn was in the lead. When Officer Fishburn drew near Reese, he deployed his Taser. However, Reese was not hit by the Taser and continued to run, in defiance of the commands of Officer Fishburn and other officers to stop. Reese jumped a guardrail and ran between two houses on Euclid Avenue, with Officer Fishburn still in pursuit. The other officers temporarily lost sight of Reese and Officer Fishburn, just before hearing multiple gunshots. Reese came into view again and raised his weapon. Officers Wood and Scott fired their weapons at Reese, who was struck in the shoulder.

After Reese was subdued, Detective Timothy Day located Officer Fishburn lying between the houses. Officer Fishburn had been shot in the head, and his bullet proof vest had been struck in the chest area. He was transported to Wishard Memorial Hospital in critical condition. Despite an early prognosis of near-certain death, Officer Fishburn survived.

Reese was charged with Attempted Murder, Resisting Law Enforcement, and Carrying a Handgun Without a License. At the conclusion of a jury trial, he was convicted as charged. On January 7, 2010, the trial court sentenced Reese to fifty years imprisonment for Attempted Murder, one year for Resisting Law Enforcement, and eight years for Carrying a Handgun Without a License. The sentences are to be served consecutively, providing for an aggregate sentence of fifty-nine years. Reese appeals.

## Discussion and Decision

### I. Evidence Rule 404(b)

Prior to trial, Reese was granted a motion in limine to exclude any direct reference to his status as a homicide suspect at the time that IMPD officers were dispatched to Bishop's residence. However, the trial court refused to prohibit Detective Randall Cook from identifying himself as a homicide investigator. Also, the State was not required to redact a portion of a police radio transmission wherein Detective Chris Smith indicated that he and other officers were "out here for homicide." (State's Ex. 2A) Reese contends that the references to "homicide" were admitted solely to "taint" him in the view of the jury. Appellant's Brief at 11.

Reese also challenges the admission of certain rebuttal evidence. After Reese testified that he knew he was wanted for failure to appear on a theft charge, the State was permitted to elicit testimony from Bishop that Reese knew he was a murder suspect. According to Reese, the cumulative effect of such evidence denied him a fair trial.

We review a trial court's determination of admissibility of evidence for an abuse of discretion and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances present. *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001). The admission of evidence of uncharged bad conduct is constrained by Indiana Evidence Rule 404(b), which provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided

that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence ·it intends to introduce at trial.

The rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State*, 690 N.E.2d 215, 218 (Ind. 1997). In determining whether to· admit evidence of specific acts under the rule, the trial court is to: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; (2) determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act; and (3) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Camm v. State*, 908 N.E.2d 215, 223 (Ind.2009).

■ Additionally, otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. *Jackson v. State*, 728 N.E.2d 147, 152 (Ind.2000). However, "the evidence relied upon to 'open the door' must leave the trier of fact with a false or misleading impression of the facts related." *Id.*

■ Here, Detective Cook's identification of himself as a homicide investigator and Detective Smith's reference to his dispatch at the request of the homicide division of IMPD did not refer to Reese or to an extrinsic bad act on his part. Thus, the 404(b) concern that Reese might be judged upon past propensities was· not implicated by testimony from Detectives Cook or Smith.

On the other hand, Bishop directly testified that Reese knew himself· to be a murder suspect when he fled. This suggested that Reese may · have committed a prior murder. Bishop's testimony was preceded by Reese's testimony:

Reese: First [two officers] asked me to step outside to talk. I told them no, I had to put my dog up and they said, "Just step out real· quick," and I shut the door and locked it.

Defense Counsel: Didn't want to talk to the police.

Reese: No.

Defense Counsel: Did you have a warrant out for you?

Reese: Yes.

Defense Counsel: And what was that warrant for?

Reese: I didn't show up for court over a theft charge.

(Tr. 1212–13.) Reese further testified that he believed police were chasing him "cause I was running around with a gun in my hand." (Tr. 1220.) Accordingly, Reese's testimony ignored the gravity of his legal peril and suggested that he faced only a relatively minor charge that would not motivate him to employ violence to escape. The trial court did not abuse its discretion by finding that Reese offered misleading testimony that "opened the door" to testimony that Reese was aware of his status as a murder suspect.

## II. Jury Instruction

■ Reese contends that the trial court abused its discretion by giving Final Instruction 26, which provides:

The intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime.

The intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious bodily injury.

(App.350.) Reese maintains that the instruction "unduly highlighted one piece of evidence," Appellant's Brief at 15, and that such emphasis on particular evidence is erroneous according to *Ham v. State,* 826 N.E.2d 640 (Ind.2005) and *Ludy v. State,* 784 N.E.2d 459 (Ind.2003).

"The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001). Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. *Ham,* 826 N.E.2d at 641. The courts of this State have "long disapproved" instructions that unduly "emphasize one particular evidentiary fact, witness, or phase of the case." *Id.* at 641–42. "An instruction as to what evidence warrants an inference of guilt clearly invades the jury's province." *Crawford v. State,* 550 N.E.2d 759, 761 (Ind.1990).

In *Dill,* the Court held that is was error to instruct the jury that a defendant's flight after the commission of a crime, although not proof of guilt, may be considered as evidence of consciousness of guilt. In *Ludy,* the Court held that the trial court erred in instructing the jury that "[a] conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." 784 N.E.2d at 460. In *Ham,* our Supreme Court held that the trial court erred in instructing the jury as follows: "A defendant's refusal to submit to a chemical test may be considered as evidence of intoxication." 826 N.E.2d at 641.

Reese urges this Court to find that Final Instruction 26 is likewise infirm. However, the challenged instruction does not highlight the testimony of a particular witness. Nor does the instruction highlight a particular evidentiary fact offered to establish the elements of Attempted Murder. The jury was invited to consider the use of a deadly weapon and all of the attendant circumstances; this is necessarily the focus in an attempted murder case, as such cases frequently involve "inherent ambiguity" and turn upon intent. *See Hopkins v. State,* 759 N.E.2d 633, 637 (Ind.2001). Indeed, our Supreme Court has examined an instruction "permitting the jury to infer intent to commit murder from the use of a deadly weapon in a manner likely to cause death or great bodily injury" and found "no error, fundamental or otherwise." *Bethel v. State,* 730 N.E.2d 1242, 1246 (Ind. 2000).

Reese also complains that the use of the word "attack" was unduly prejudicial to him. Reese admitted that he fired shots in the direction of Officer Fishburn but claimed that they were random shots. Although he objected to the trial court that "attack" was improper, Reese did not offer an alternative term to describe the event from his point of view. Nonetheless, to the extent that the instruction may have been more artfully drafted, we find the use of the term "attack" at most harmless error in light of the testimony that Reese deliberately fired multiple shots, two of which struck Officer Fishburn with deadly accuracy in his head and chest. *See Camm,* 908 N.E.2d at 225 ("harmless error is error that does not affect the substantial rights of a party given the error's likely impact on the jury in light of other evidence presented at trial.").

### III. *Sufficiency of the Evidence*

Reese contends that the State failed to present sufficient evidence to sus-

tain his conviction for Attempted Murder. In order to convict Reese of Attempted Murder, the State was required to prove beyond a reasonable doubt that Reese, acting with the specific intent to commit murder, engaged in an overt act that constituted a substantial step toward the commission of the crime. *Davis v. State,* 558 N.E.2d 811, 812 (Ind.1990). Reese does not deny that he committed an overt act of shooting toward Officer Fishburn. Rather, he claims the State failed to prove beyond a reasonable doubt that he intended to kill Officer Fishburn when he shot and wounded him.

▮ When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The requisite intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Davis,* 558 N.E.2d at 812. Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill. *Leon v. State,* 525 N.E.2d 331, 332 (Ind.1988).

Reese admitted that, while he was fleeing to avoid police apprehension, he fired three shots in the direction of Officer Fishburn. Two shots struck Officer Fishburn, one shot to the head that was very nearly fatal, and one shot to the chest that would have been potentially fatal but for the bulletproof vest. Additionally, one of Reese's former cellmates testified that Reese had boasted of ambushing Officer Fishburn when "he went around a corner of some sort, stopped, turned around and waited for the officer to get in view and then began shooting at the officer." (Tr.

992.) There is sufficient evidence from which the jury could infer that Reese intended to kill Officer Fishburn.

### IV. Sentencing

Upon conviction of a Class A felony, Reese faced a sentencing range of twenty years to fifty years, with the advisory sentence being thirty years. *See* Ind.Code § 35–50–2–4. Upon conviction of a Class C felony, he faced a sentencing range of two years to eight years, with the advisory sentence being four years. *See* Ind.Code § 35–50–2–6. Upon conviction of a Class A misdemeanor, he faced a sentence of up to one year. *See* Ind.Code § 35–50–3–2. Reese received an aggregate sentence of fifty-nine years, the maximum possible sentence. He presents two sentencing challenges, first arguing that the trial court abused its discretion by ignoring compelling evidence of a mitigating circumstance, and second arguing that his sentence is inappropriate.

### Mitigating Circumstance.

▮ Reese argues that the trial court ignored a mitigating circumstance clearly supported by the record, specifically, that his incarceration would result in undue financial hardship to his children.

▮ "So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind.2007) (Anglemyer II). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. *Id.* at 490–91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." *Id.* at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. *Id.* However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. *Id.* A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State,* 877 N.E.2d 462, 464 (Ind.2007).

An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant. *Anglemyer II,* 875 N.E.2d at 220–21.

With regard to Reese's children, a trial court "is not required to find that a defendant's incarceration would result in undue hardship upon his dependents." *Davis v. State,* 835 N.E.2d 1102, 1116 (Ind. Ct.App.2005), *trans. denied.* Indeed, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind. 1999).

The trial court's post-trial sentencing order provided in relevant part:

> While the Defendant urges the court to find that it would create a hardship on the dependents of the Defendant, the court notes the defendant's parental rights were terminated as to his child with Lona Bishop and that his older

children, ages 15, 14 and 12 (according to the PSI), while they have a good relationship with the Defendant, are not dependent upon him for their support. For these reasons, the court gives minimal weight to this mitigating circumstance.

(App.396.) Thus, the trial court recognized that the children were emotionally attached to Reese and would be adversely impacted by his incarceration, but elected to give the mitigating circumstance only minimal weight. To the extent that Reese urges reweighing of a mitigating circumstance, the argument is unavailable to him. *Anglemyer,* 868 N.E.2d at 491.

Nonetheless, Reese argues that the trial court misstated the record and wholly ignored evidence of his financial support to his children. He points to his eldest daughter's testimony that he "has been supportive also financially." (Tr. 1518.) However, the evidence adduced at the sentencing hearing indicates that Reese's ex-girlfriend and her husband were primarily responsible for Reese's eldest three children.[4] Reese had, at best, sporadically provided temporary housing and entertainment for his children. The presentence investigation report states that Reese had no court-ordered child support obligation for his children, a statement Reese did not contest. We do not find that the trial court abused its discretion by failing to identify undue financial hardship to Reese's children as a significant mitigating circumstance.

*Appropriateness of Sentence.*

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

---

4. The children's stepfather is Reese's long-term friend who testified on Reese's behalf at the sentencing hearing. He is also Reese's former business partner in a gutter-cleaning and high-rise window washing business.

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind.2008). A defendant " 'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.' " *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)).

■ As for the nature of the offenses, Reese fled from several police officers who were engaged in the execution of their duties and then fired multiple shots at one of those officers. Although Officer Fishburn employed verbal commands and his Taser in an attempt to subdue Reese, Reese responded with deadly force. Reese ambushed Officer Fishburn and shot him in the head and chest, leaving him in critical condition.

Officer Fishburn's neurosurgeon, Dr. Richard Rodgers, testified that most patients do not survive a devastating brain injury of the type sustained by Officer Fishburn. His initial assessment of Officer Fishburn's chance for survival was "about ten percent." (Tr. 884.) After multiple surgeries, Officer Fishburn recovered with "significant deficits." (Tr. 905.) He has continued to struggle with partial limb paralysis, impediments to his speech and thought processes, and a constant threat of seizures.

As to the character of the offender, Reese has a history of juvenile and criminal offenses. He has previously violated probation and was on bond at the time he committed the present offenses. He has a history of substance abuse and had abused crack cocaine shortly before fleeing from police and shooting Officer Fishburn. By the time that Reese was sentenced for the instant offenses, he was facing three murder charges.[5]

In sum, there is nothing in the nature of the offenses or the character of the offender to persuade us that a maximum sentence is inappropriate.

### Conclusion

Reese has demonstrated no abuse of the trial court's discretion in the admission of evidence or in the instruction of the jury. There is sufficient evidence of Reese's intent to kill Officer Fishburn. Finally, Reese has not shown that the trial court abused its sentencing discretion or that his maximum sentence is inappropriate.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

**5.** Although an arrest record, standing alone, does not establish the historical fact that a defendant committed a criminal offense, such information may be relevant to an assessment of the defendant's character in terms of the risk that he will commit another crime. *See Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005).