**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**E. PAIGE FREITAG**
Jones, McGlasson & Benckart
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 19 2012, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND BENJAMIN GRAY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1106-CR-327 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Tornatta, Judge
Cause No. 82D02-1008-MR-801

**January 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Raymond Benjamin Gray carried an unlicensed handgun when he accompanied his wife and children to a sporting event at an Evansville park. Shortly after arriving, he encountered a man who had been in a dispute with his brother. When the man's associate punched him from behind, Gray fired his weapon several times. One of the bullets struck the assailant in the head, and he died. Gray fled, but when police apprehended him, he cooperated. A jury acquitted him of voluntary manslaughter, but convicted him of class C felony criminal recklessness and class A misdemeanor carrying a handgun without a license. Gray now appeals, challenging his eight-year aggregate executed sentence. Finding that the trial court acted within its discretion and that Gray has failed to establish the inappropriateness of his sentence, we affirm.

**Facts and Procedural History**

At 9:00 p.m. on August 5, 2010, Gray took his wife, three of their five children, and two teenaged cousins to an Evansville park for a summer basketball tournament. The tournament was a community event, and approximately 250 people were at the park that night. Several years earlier, Gray had been attacked with a knife at a similar event at a Gary, Indiana park. As a result, he carried a handgun with him to the Evansville park that night. He did not have a license to carry the handgun.

Shortly after arriving, Gray got into an argument with Mario Watkins and Dewayne Thomas concerning a disagreement between his brother and Watkins. Tempers momentarily calmed when Antoine Adams intervened. Gray began to walk away, and Watkins and

2

Thomas followed. According to the park's surveillance cameras, Thomas hit Gray in the back of the head, and Gray pulled out the handgun and fired three to eight shots, one of which hit Thomas in the head. As the shots rang out across the playground area, onlookers began to scatter. Gray fled the scene and discarded his handgun and clothes. Thomas was taken by ambulance to a nearby hospital, where he died from his gunshot wound.

Later, Gray's wife returned home and found Gray there. He had taken a shower, changed his clothes, and cut his hair. He considered fleeing, but told his wife that he was going to turn himself in. Police later found him hiding in the backseat of his minister's vehicle and arrested him. Gray admitted shooting Thomas, but claimed self-defense/defense of his family. He wrote an apology letter and told police the location of the weapon as well as his clothes.

On August 10, 2010, the State charged Gray with murder, class C felony criminal recklessness, and class A misdemeanor carrying a handgun without a license. The murder charge was later amended to class A felony voluntary manslaughter. On April 27, 2011, a jury found him guilty on the criminal recklessness and handgun counts and acquitted him of voluntary manslaughter.

At a May 25, 2011, sentencing hearing, Gray cited his minimal criminal history and his family support obligations in requesting a suspended sentence, work release, or home detention. The State argued in favor of an executed sentence, citing a prior firearm conviction in Illinois. The trial court identified as aggravators Gray's prior firearm offense, the number of shots fired, the victim's death, and the crowded, family-oriented location.

The court sentenced Gray to an eight-year executed term for criminal recklessness and a concurrent one-year term for the handgun offense. This appeal ensued. Additional facts will be provided as necessary.

**Discussion and Decision**

Gray claims that the trial court abused its discretion in sentencing him. He also asks us to revise his sentence pursuant to Indiana Appellate Rule 7(B). We address each contention in turn. Sentencing decisions are within the trial court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. "So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion." *Id*. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (citations and quotation marks omitted).

*I. Abuse of Discretion*

Gray claims that the trial court abused its discretion in applying certain aggravating and mitigating circumstances at sentencing. A trial court may impose any sentence that is authorized by Indiana's Constitution and statutes regardless of the presence or absence of aggravating or mitigating circumstances. Ind. Code § 35-38-1-7.1(d). If the trial court finds the existence of aggravating or mitigating circumstances, then it is required to give a statement of its reasons for selecting the sentence that it imposes. *Anglemyer*, 868 N.E.2d at 490. One of the ways that a trial court may abuse its discretion is by failing to consider aggravating or mitigating factors that are clearly supported by the record and advanced for

4

consideration during sentencing. *Id*. at 490-91.

The trial court sentenced Gray to an eight-year term for his class C felony criminal recklessness conviction and a concurrent one-year term for his class A misdemeanor handgun conviction. The statutory sentencing range for a class C felony is two to eight years, with a four-year advisory term. Ind. Code § 35-50-2-6. A class A misdemeanor conviction subjects the offender to a sentence of not more than one year. Ind. Code § 35-50-3-2.

The trial court found the following aggravating circumstances: victim impact, Gray's criminal history, and the circumstances surrounding the shooting. Gray does not dispute that victim impact and criminal history are proper considerations in sentencing pursuant to Indiana Code Section 35-38-1-7.1(a). Instead, he asserts that the trial court improperly counted as aggravating circumstances its opinions and biases concerning his decision to take a handgun to a crowded park in *Evansville*, as opposed to *Gary*, Indiana. However, with respect to the family setting, we note that it is proper to consider whether a violent offense was committed in the presence of children. Ind. Code § 35-38-1-7.1(a)(3). Moreover, with respect to the issue of safety in Indiana's various cities, the trial judge addressed the two cities, but seemed to grapple more with the reasonableness of Gray's defense of family argument, indicating that he could "not wrap [his] hands around the whole concept that [Gray] had the gun to protect [his] family." Tr. at 480. The trial court went on to say that "when you want to take the kids out for the night, you don't take them to a place where you feel like you have to take a gun to be safe." *Id*. at 481. We conclude that these comments merely emphasized Gray's poor judgment and did not amount to an abuse of discretion.

Gray also argues that the trial court ignored his financial hardship argument. In this vein, we note that "many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Reese v. State*, 939 N.E.2d 695, 703 (Ind. Ct. App. 2011), *trans. denied*. Gray made no showing of special circumstances of undue hardship. Thus, the trial court did not abuse its discretion on this point.

## II. *Appropriateness of Sentence*

Gray also challenges the appropriateness of his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). Our review should focus on the aggregate sentence rather than its consecutive or concurrent nature, number of counts, or length of the sentence on any individual count. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490; *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer*, 868 N.E.2d at 494. Gray was sentenced to eight years for class C felony criminal recklessness, which carries a two-to-eight-year range and a four-year advisory term. Ind. Code § 35-50-2-6. He also received a concurrent one-year term for his handgun offense, which is the maximum allowable for a class A misdemeanor conviction. Ind. Code § 35-50-3-2. His offense resulted in the death of one man and, given the multiple shots fired in the crowded playground and recreational area, the casualties could have been higher. As reckless acts go, firing a gun multiple times in a large crowd that includes families with children carries strong potential for serious injury. Thus, we cannot downplay the actual or potential consequences of Gray's conduct.

In examining Gray's character, we see a man who packed an unlicensed handgun while accompanying his family on an outing to a crowded park. When he was attacked from behind with a fist, he responded with a gun. Although he did not initiate the incident, his overreaction in firing multiple shots escalated the fracas to a deadly level. Such behavior indicates that he is a man of extremely poor judgment who has failed to learn from prior experience. To the extent that he cites his apology and his cooperation with police following his arrest as evidence of good character, we note that his initial response was to flee the scene and avoid detection by altering his appearance and discarding his clothing and weapon. Notwithstanding his minimal criminal history in Indiana, with one conviction for class A misdemeanor false informing, he admitted to a handgun-related conviction in Illinois.

Finally, we again note his argument in favor of work release or probation based on his obligation to support his five children, but we also note that prisons are unfortunately populated with many fathers and find that Gray made no particular showing of how his status as a father reflects well on his character, especially in light of the circumstances surrounding these particular offenses. As such, we conclude that Gray has failed to meet his burden of establishing that his eight-year maximum executed sentence is inappropriate in light of the nature of the offense and his character. Accordingly, we affirm.

Affirmed.

MAY, J., and BROWN, J., concur.