**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 22 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MARJORIE LAWYER-SMITH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEIDI CARPENTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1405-CR-348 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc Rothenberg, Judge
Cause No. 49G02-1209-MR-65363

**December 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Heidi Carpenter (Carpenter), appeals her conviction for murder, a felony, Ind. Code § 35-42-1-1(1).

We affirm.

## ISSUE

Carpenter raises one issue on appeal, which we restate as: Whether the trial court abused its discretion when it refused to tender Carpenter's proposed instructions to the jury.

## FACTS AND PROCEDURAL HISTORY

During the night of September 15, 2011, Kimberly Ward (Ward) was throwing away trash in the dumpster at the Travel Inn, in Indianapolis, Indiana, when the body of Dinesh Patel (Patel) "came flying off the second tier of the balcony and almost hit [her]." (Transcript p. 62). Screaming for her boyfriend, Michael Richard (Richard), Ward ran back to her motel room and called 911. Alerted by Ward's screams, Richard exited the motel room and saw Ward running towards him, followed by Jose Hernandez (Manny). He saw Carpenter in the parking lot, "lurking in between the cars," and wearing a red hooded sweatshirt. (Tr. p. 76). Looking up, he also noticed a man resembling Carpenter's uncle, Tony Steenburgen (Steenburgen), on the second floor balcony.

When officers with the Indianapolis Metropolitan Police Department arrived at the Travel Inn, they discovered Patel's body wrapped in a white sheet near the dumpster.

Patel had suffered multiple blunt force traumas, lacerations to his head, neck, chest, arms, and legs, a fractured nose and jaws, and a severely dislocated neck.

Detective Brian Schemenaur (Detective Schemenaur) interrogated Carpenter on September 21, 2011, and again, a year later, on September 19, 2012. Both interviews were recorded by video. During her first statement, Carpenter gave several different versions of the events during the night that Patel was murdered, but eventually told Detective Schemenaur that Steenburgen had killed Patel in her motel room while she and her boyfriend, Manny, were in the room. She claimed that Manny had lured Patel to the room and then Steenburgen hit him repeatedly with a pole. She admitted that she helped gather all bloody items in the room and dispose of them. Claiming to be afraid of Steenburgen, she explained her actions by indicating that Steenburgen had threatened hers and Manny's family if they refused to help.

During the second interview on September 19, 2012, Carpenter admitted that she was aware of what was going to happen when she and Manny called Patel into their room because Steenburgen had called them several days prior, cautioning them that he was coming over to kill Patel. After Steenburgen had struck Patel several times, he instructed Carpenter and Manny to hit Patel a few times with a pole. Carpenter claims that she believed Patel to be already dead when she and Manny struck him.

On September 20, 2012, the State filed an Information charging Carpenter with murder, a felony, I.C. § 35-42-1-1(1). On March 10 through March 12, 2014, the trial court conducted a jury trial. At the close of the evidence, the jury returned a guilty

verdict. On April 23, 2014, during a sentencing hearing, the trial court sentenced Carpenter to fifty-five years executed at the Department of Correction.

Carpenter now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Carpenter contends that the trial court abused its discretion when it refused to tender her proposed instructions to the jury. The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Reese v. State*, 939 N.E.2d 695, 701 (Ind. Ct. App. 2011). It is well established that instructing the jury is within the discretion of the trial court. *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id*. The courts of this State have "long disapproved" of instructions that unduly "emphasize one particular evidentiary fact, witness, or phase of the case." *Reese*, 939 N.E.2d at 701 (quoting *Ham v. State*, 826 N.E.2d 640, 641 (Ind. 2005)).

In reviewing a trial court's decision to give or refuse a tendered jury instruction, this court considers whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. *Whitney v. State*, 750 N.E.2d 342, 344 (Ind. 2001).

4

Carpenter challenges the trial court's denial of her tendered instructions #2 and #5, both of which particularly relate to her confessions. The State does not dispute that the proposed instructions correctly state the law; rather, the State asserts that the trial court refused the instructions because their content was already covered by other jury instructions.

Carpenter invited the trial court to read her proposed instruction #2 to the jury, which provided:

> You have before you evidence that the defendant made confessions relating to the crimes charged in the [I]nformation. It is for you to determine whether the defendant made the confessions, and if so, what weight should be given to the confessions. In determining the weight to be given to the confessions, you should consider all the circumstances under which they were made.

(Appellant's App. p. 78). In addition, Carpenter suggested the following instruction #5:

> Confessions, even those found to be voluntary, are not conclusive of guilt. And, as with any other part of the [S]tate's case, a confession may be shown to be insufficiently corroborated or otherwise unworthy of belief.

(Appellant's App. p. 81).

When offered the proposed jury instructions, the trial court "believe[d] that the, the heart in instruction number two isn't even necessarily the confession portion because when the confession is voluntary, if you look at *Long* it talks about how the court is the one who's responsible to determine that." (Tr. pp. 342-43). Furthermore, when considering the intent of the proposed instructions, the trial court concluded that this was already covered under the more broadly-phrased preliminary instruction #3, #8, and #9.

Preliminary instruction #3 provided that "[u]nder the Constitution of Indiana you have the right to determine both the law and the facts. The [c]ourt's instructions are your best source in determining the law." (Appellant's App. p. 60). The more general preliminary instruction #8 stated:

> The burden is upon the State to prove beyond a reasonable doubt that the defendant is guilty of the crime(s) charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the defendant's guilt. But it does not mean that a defendant's guilt must be proved beyond a possible doubt.
>
> A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the defendant's guilt, after you have weighed and considered all the evidence.
>
> A defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt.
>
> The State must prove each element of the crime(s) by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.
>
> If you find that there is a reasonable doubt that the defendant is guilty of the crime(s), you must give the defendant the benefit of that doubt and find the defendant not guilty of the crime under consideration.

(Appellant's App. p. 68). And finally, preliminary instruction #9 covered:

> You are the exclusive judges of the evidence, which may be either witness testimony or exhibits. In considering the evidence, it is your duty to decide the value you give to the exhibits you receive and the testimony you hear. In determining the value to give to a witness's testimony, some factors you may consider are:
> - The witness's ability and opportunity to observe;
> - The behavior of the witness while testifying;
> - Any interest, bias or prejudice the witness may have;
> - Any relationship with people involved in the case;
> - The reasonableness of the testimony considering the other evidence;

6

- Your knowledge, common sense, and life experiences.

    You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

    The quantity of evidence or the number of witnesses need not control your determination of the truth. You should give the greatest value to the evidence you find most convincing.

(Appellant's App. p. 69).

Although both of Carpenter's proposed instructions focused on her confessions, the tendered preliminary instructions emphasized the province of the jury to weigh these confessions and evaluate them in light of all the surrounding circumstances. However, Carpenter now maintains that the preliminary instructions are too general without "directly address[ing] the enormity of the weight a confession provides in a case." (Appellant's Br. p. 11). She asserts that the preliminary jury instructions never notified the jury that a defendant should be considered a witness and her confessions should be given the same consideration and scrutiny as all other witness testimony.

Because jury instructions are to be considered in reference to each other, we note that final instruction #7 informed the jurors as follows:

    You have seen video recordings. This is proper evidence that you should consider together with and in the same way you consider the other evidence.

    You were also given transcripts of the conversations on the video recordings to help you follow the recordings as you listened to them. The recordings are the evidence of what was said and who said it. The transcripts are not evidence. If you noticed any differences between what you heard in a conversation and what you read in the transcripts, your understanding of the recording is what matters.

(Appellant's App. p. 95).

7

Therefore, read together as a whole, the preliminary and final jury instructions tendered to the jurors informed them that Carpenter's videotaped confessions should be considered evidence in the case. As with other evidence, the jury should determine their evidentiary weight and consider them in the context of all evidence presented at trial. Moreover, the guidance that a confession constitutes evidence is repeated in preliminary instruction #9 where evidence included "the exhibits you receive and the testimony you hear." (Appellant's App. p. 69).

Consequently, the jury was empowered to weigh the credibility of the witnesses and address the evidentiary value of statements in the context of all the evidence presented. The trial court clarified—by way of final instruction #7—that this principle applied equally to video recordings, without the necessity of tendering an explicit jury instruction referencing confessions. *See Reese*, 939 N.E.2d at 701 (courts disapprove of instructions that focus on a single witness' testimony or a specific piece of evidence). As such, we conclude that the trial properly determined that Carpenter's proposed jury instructions were already covered by the preliminary and final jury instructions.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by refusing to tender Carpenter's proposed instructions to the jury.

Affirmed.

VAIDIK, C. J. and BAKER, J. concur