## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2020, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Luvelle Deshawn Neal,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 6, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1698<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Elizabeth C.<br>Hurley, Judge<br><br>Trial Court Cause No.<br>71D08-1803-F1-5 |

**Mathias, Judge.**

[1] Following a jury trial, Luvelle Deshawn Neal ("Neal") was convicted of attempted murder as a Level 1 felony and dealing in cocaine as a Level 3

felony. Neal appeals and contends that there was insufficient evidence to sustain his convictions.

We affirm.

## Facts and Procedural History

On March 22, 2018, Neal received a call from Darrell Burger ("Darrell"), to whom he had sold cocaine and heroin in the past. Darrell's brother Gage Burger ("Gage") wanted to buy drugs from Neal. The men agreed to meet that evening in the parking lot of a downtown South Bend bar, Frank's Place. The Burger brothers arrived in a Mercury Grand Marquis that was borrowed from a neighbor. Darrell was driving, and Gage was the front seat passenger. Gage was armed with a Glock firearm and a debit card, but no cash. He also brought five sets of digital scales commonly used to weigh controlled substances during drug transactions.

Shortly after 6 p.m., Neal arrived with a man named Larry Harris ("Harris"). Neal exited their vehicle and got into the backseat of the Grand Marquis, behind Gage. He immediately grabbed Gage by the back of his neck and pointed a gun at the back of Gage's head; Darrell demanded that Neal get out of the car and started the engine. Neal briefly pointed the gun at Darrell and then struck Gage on the head with the butt of the gun. Meanwhile, Gage had reached for his own weapon and put it under his leg.

Gage opened the car door and leapt from the vehicle; Gage and Neal exchanged fire, and Neal followed Gage out of the vehicle. Darrell, still in the

driver's seat, heard multiple gunshots but did not know whether his brother or Neal fired first. Darrell pulled out of the parking lot, circled the block, and came back to find Gage lying on the ground and bleeding from his neck. Darrell drove away. Harris, who had been waiting in his vehicle, heard the gunshots and saw the Grand Marquis drive away. Harris saw Neal holding his chest and waving him off; Harris pulled out of the parking lot and circled the area until he found Neal, picked him up, and took him to a hospital.

[6]     Law enforcement quickly arrived at the scene. South Bend Police Department Officer Russell Lupica found Gage lying motionless and bleeding in the parking lot. He recovered a gun on the ground near Gage's knee and performed CPR until medics arrived to transport Gage to a hospital. Detective Chris Kronewitter was assigned to investigate the shooting; he went to Memorial Hospital, where both Neal and Gage were being treated for their injuries. Detective Kronewitter spoke to Neal at the hospital that night and again the next day, March 23. Neal admitted that he was at Frank's Place to sell drugs to Gage and that he had fired about five shots at Gage. He described hiding cocaine and his handgun under a trashcan in the parking lot before fleeing. Neal also admitted that he had been dealing marijuana and cocaine for two and a half years and had been carrying a gun for two years. Gage's injuries prevented Detective Kronewitter from interviewing him at the time.

[7]     Law enforcement recovered Neal's gun and various shell casings and bullet fragments from the Frank's Place parking lot. The shell casings were all .40 caliber but were of two different manufacturer brands. A crime laboratory

firearm examiner determined that four shell casings were fired from Gage's gun and seven shell casings were fired from Neal's gun. Law enforcement also recovered video surveillance of the shooting from Frank's Place. Darrell was tracked to Mishawaka, where his fiancée hid the wallet, cell phone, and debit card that Gage left behind in the Grand Marquis in an outdoor grill. Darrell returned the vehicle to his neighbor; its front driver's side window and back passenger's side window were shattered, and there were several bullet holes inside the vehicle. On Darrell's suggestion, the neighbor reported the car stolen, but later admitted that the report was false and she had allowed Darrell to borrow the car.

[8] On March 26, 2018, Neal was charged with Level 1 felony attempted murder, Level 3 felony aggravated battery, Level 3 felony attempted armed robbery, and Level 5 felony dealing in cocaine. Following a jury trial, on May 15, 2019, Neal was found guilty of attempted murder, aggravated battery and dealing in cocaine, and not guilty of attempted armed robbery. Because the same facts and circumstances supported both the attempted murder and aggravated battery offenses, the trial court entered judgment of conviction only for attempted murder and dealing in cocaine. A sentencing hearing was held on June 26, 2019; Neal was sentenced to twenty-five years in the Department of Correction for attempted murder and three years for dealing in cocaine, to be served concurrently. This appeal followed.

# Discussion and Decision

[9] On appeal, Neal contends that the evidence is insufficient to support his convictions for dealing in cocaine and attempted murder. When reviewing challenges to the sufficiency of evidence, we do not reweigh the evidence nor do we reassess the credibility of witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and to the reasonable inferences that may be drawn from the evidence in determining whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id.* A verdict may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000). Reversal is only appropriate when no reasonable trier of fact could find the elements of the crime proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

## I. Dealing in Cocaine

[10] Neal argues that the evidence used to support his conviction for dealing in cocaine was insufficient because the State did not present evidence that he actually possessed cocaine. "A person who knowingly or intentionally possesses, with intent to deliver cocaine . . . commits dealing in cocaine . . . a Level 5 felony." Ind. Code § 35-48-4-1. In order to convict Neal of dealing in cocaine, the State was required to prove that Neal knowingly possessed cocaine with the intent to deliver the cocaine. *See id.*

[11] Neal is correct that the State did not offer direct, physical evidence in the form of the cocaine that Neal intended to sell to Gage; however, circumstantial evidence of possession with intent to deliver is sufficient to support the conviction. *See Stokes v. State*, 801 N.E.2d 1263, 1272 (Ind. Ct. App. 2004) (affirming conviction for dealing in cocaine based on evidence from which jury could reasonably infer defendant possessed cocaine), *trans. denied*. On appellate review, such evidence does not have to overcome every reasonable hypothesis of innocence, but need only generate a reasonable inference of guilt. *Mills v. State*, 512 N.E.2d 846, 848 (Ind. 1987).

[12] The State presented evidence that Neal met the Burger brothers after Darrell called Neal and relayed Gage's request to purchase drugs. Darrell called Neal because Neal had sold him cocaine and heroin in the past. The nature of their relationship was not disputed by defense counsel at trial. Darrell testified that Gage wanted to purchase heroin for $1400. Detective Kronewitter, who interviewed Neal in the hospital immediately after the shooting, testified that Neal explained he had been "going to [sell] twenty grams of cocaine for $1300" and had been robbed. Tr. Vol. IV, p. 32. Neal also told Detective Kronewitter where his gun was located.

[13] Neal admitted that his reason for meeting the Burger brothers was to sell cocaine and that cocaine was in his pocket at the time of their meeting. Ex. Vol., State's Ex. 223. Neal also admitted to abandoning the drugs under a trashcan with his gun before fleeing the scene. Indeed, based on Neal's information, law enforcement recovered the gun that he hid under a trashcan,

but they did not discover cocaine or other drugs under the trashcan. Neal argues that the evidence was insufficient to support his conviction because "[no]one ever saw any cocaine." Appellant's Br. at 18. The statutory elements of the offense however, do not include physical recovery of the controlled substance in question; that is to say, nothing precludes conviction for dealing in cocaine if the evidence presented—including circumstantial evidence—and reasonable inferences that can be drawn from the evidence are sufficient to find a defendant guilty beyond a reasonable doubt. Here, the jury could reasonably infer, based on Neal's own admissions and on the circumstantial evidence presented, that he knowingly and intentionally possessed cocaine with the intent to deliver and sell it to Gage for $1300. Accordingly, we find that this evidence was sufficient to support the jury's determination that Neal possessed cocaine with the intent to deliver.

## II. Attempted Murder

[14] Neal also argues that the evidence used to support his conviction for attempted murder was insufficient because the State did not present evidence that he had the requisite specific intent to kill. To convict Neal of attempted murder, the State was required to prove that Neal "acted with the specific intent to kill and that he engaged in conduct constituting a substantial step toward the killing of" Gage. *See Gall v. State*, 811 N.E.2d 969, 975 (Ind. Ct. App. 2004); I.C. § 35-42-1-1; I.C. § 35-41-5-1. Where typically, the culpability requirement for the attempt of a crime is that of the specific crime attempted, for convictions of attempted murder our supreme court "has emphasized the importance of requiring specific

intent to kill . . . despite [] the culpability requirement for murder includ[ing] the lesser standard of 'knowingly.'" *Perez v. State*, 872 N.E.2d 208, 211 (Ind. Ct. App. 2007), *trans. denied.*

[15] Specific intent to kill "may be inferred from the intentional use of a deadly weapon in a manner likely to cause death." *Reese v. State*, 939 N.E.2d 695, 702 (Ind. Ct. App. 2011), *trans. denied.* "Discharging a weapon in the direction of a victim is substantial evidence from which a jury can infer intent to kill." *Id.*

[16] Here, Neal admitted to Detective Kronewitter that he was armed with a gun when he arrived at Frank's Place, and a gun matching his description was later recovered from the scene. Darrell's testimony was that Neal pointed a weapon at Gage's head immediately upon entering Darrell's vehicle, and then Neal struck Gage on the head with the butt of the gun. Neal admitted to Detective Kronewitter that he fired his weapon several times; ballistic evidence showed that Neal fired at least seven times based on the recovery of seven shell casings that matched the gun found at the scene. Evidence was also presented that Gage—who was unable to testify at trial due to the severity of his injuries—received an injury to his head, above his eye, with characteristics of a bullet wound. Gage was also shot above his waistline on the right side of his body.

[17] The evidence presented, including Neal's own admissions, established that Neal "deliberately used a deadly weapon in a manner likely to cause death or serious injury." *See Bethel v. State*, 730 N.E.2d 1242, 1245 (Ind. 2000). He deliberately pointed and fired his gun at Gage in a manner likely to cause injury or death to

Gage. Thus, the evidence presented was sufficient for a jury to reasonably conclude Neal acted with the specific intent to kill Gage and that shooting Gage constituted a substantial step toward doing so.

## Conclusion

[18] The evidence presented was sufficient to sustain Neal's convictions for dealing in cocaine and attempted murder. Because the jury could reasonably find the elements of each offense proved beyond a reasonable doubt, we affirm the judgment of the trial court.

[19] Affirmed.

Kirsch, J., and Bailey, J., concur.